GEORGE R. PAULEY *vs.* BROCKTON SAVINGS BANK.

Plymouth. March 7, 1940. — March 27, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Landlord and Tenant,* Common stairway, Landlord's liability to tenant or his family or his invitee.

A finding of liability of the landlord of a building for personal injuries sustained by a business visitor of a tenant through a fall when his heel caught "on something" as he was descending a common stairway was warranted by evidence that the stairway was in good condition at the beginning of the tenancy and certain evidence of the appearance of the metal treads and of a piece broken from one of the treads and found on the stairway immediately after the accident.

Tort. Writ in the Superior Court dated July 12, 1937.

A verdict for the plaintiff in the sum of $18,665 was returned before *Hurley*, J.

*E. J. Campbell*, (*J. W. Keith* with him,) for the defendant.

*E. G. Townes*, (*M. J. Murphy* with him,) for the plaintiff.

Dolan, J. This is an action of tort to recover compensation for personal injuries sustained by the plaintiff on September 2, 1936, in a building of which the defendant was in possession under the terms of a mortgage deed. The case was tried to a jury who returned a verdict for the plaintiff; it now comes before us upon the defendant's exceptions to the denial by the judge of its motion for a directed verdict and to his denial of its motion to enter a verdict in its favor under leave reserved.

The evidence would warrant the jury in finding the following facts: One Noone, the editor of a local paper in Brockton, became a tenant in the building involved on April 24, 1934. At that time the defendant held a mortgage on the premises. On December 17, 1935, the defendant entered upon the premises to foreclose its mortgage. Thereafter, and at the time of the injury sustained by the plaintiff, the defendant was in control of the premises. When Noone first became a tenant "there was a marble staircase." The stairway was in "A–1 condition when he went in there." Later there was a change in the condition of the stairway and "Certain metal treads were put on the floor boards and on the riser." Thereafter the metallic treads became worn. One was noticeably frayed. The "Brotherhood Union" became a tenant of the building on June 1, 1936. At that time "the stairway . . . appeared to be all right." Subsequently, however, there was a change in the condition of the stairway. "The stairs through use seemed to be deteriorated. They were becoming loose in places — different steps." The metal strips were "on the marble" when the "Brotherhood" became a tenant in 1936. A large number of people used the stairs. The membership of the "Brotherhood" was twelve thousand. "They used the stairs frequently . . . there were three or four meetings a week." The secretary-treasurer of the "Brotherhood

Union" "noticed the makeup of the treads . . . he reported the condition to the janitor [in the employ of the defendant] on different occasions, and also when he received a report from somebody, he would report it to the janitor . . . . He noticed wear on the metal. He gave notice to the janitor."

It is conceded by the defendant that its duty was to keep the stairway in the same condition it was or appeared to be in at the time of the letting to Noone (*Cameron* v. *Buckley,* 299 Mass. 432, 434; *Backoff* v. *Weiner, ante,* 375, 377) and that the time of the letting is as of December 17, 1935, when it entered into possession and control of the premises.

The plaintiff had visited Noone on September 2, 1936, at his request, in connection with the business of the newspaper edited by Noone. When the business had been terminated, the plaintiff left Noone's office and proceeded to the head of the stairs. After he had taken one or two steps the heel of his right foot caught "on something." He did "not know what it was." He "grabbed for the banister," but did not reach it and he "went head over heels . . . ." "He went down to the bottom" and sustained the personal injuries complained of.

When the plaintiff fell a witness of the accident examined the stairway and observed that a piece of the metal tread had been broken off, "a thin section, possibly one-half inch wide, a little section, about four inches long . . . ." One half of this section was "very rusty." The other half was a fresh break, "jagged, and it was the color of the metal — gray, for instance. It was long and narrow." It fitted exactly the tread from which it had been broken on the "extreme right side of the third tread down." It was found immediately after the accident on the eighth step of the stairway. "It appeared freshly broken on the inner edge — the rest of it appeared to be weather beaten and exposed to the elements for some time." The State inspector of buildings examined the building involved on July 1, 1936. His examination included that of the stairway in question for the purpose of determining "whether or not the stairs

were generally in good condition for the use of people coming in and out of the building on the stairway." He examined the stairway leading from Main Street to the first floor above the street, and "found the stairs to be in good condition."

The defendant contends that it is purely a matter of conjecture "as to what caused the plaintiff to fall," that there is no direct evidence of any defect, and that the "evidence is equally . . . consistent with the conclusion that he caught his heel in some unexplained manner, lunged forward to grasp the hand-rail and [that] his foot came down on the outer edge of the tread with sufficient force to cause a fresh break."

We are of opinion, however, that the jury could infer from the evidence that the plaintiff caught his foot on the tread, and that the latter was worn and defective. They also could have found that this defective condition did not exist when the tenancy between Noone and the defendant began, and that the injuries sustained by the plaintiff were caused by the negligence of the defendant in failing to preserve the stairway in the same condition as that in which it was or appeared to be in when the tenancy of Noone began. See *Griffin* v. *Rudnick*, 298 Mass. 82, 83–84, and cases cited; *Backoff* v. *Weiner, ante,* 375, 377.

The evidence as to the appearance of the tread and the broken portion was sufficient to warrant a finding that the defect had existed long enough before the accident for the defendant in the exercise of proper care to have discovered it and repaired the tread. *Solomon* v. *Boston Elevated Railway,* 276 Mass. 139, 140. The questions whether the tread had become defective and whether that condition could have been discovered by proper inspection were for the jury. *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550, 552.

*Exceptions overruled.*