ISADORE SHWARTZ *vs.* ANNIE M. FEINBERG.

Suffolk.    May 8, 1940. — June 25, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Landlord and Tenant*, Landlord's liability to tenant or his family or his invitee, Common stairway. *Evidence*, Of presence of object.

Evidence warranted a finding of liability of a landlord to his tenant for injuries sustained in a fall due to an "old," "dirty looking" nail which had protruded from a step of a common stairway for some two months before the accident but had not so protruded at the time of the letting.

A finding that a nail did not protrude from a step in a stairway of a tenement house at a particular time was warranted by testimony of the person in charge of repairs for the owner, that he "looked over" the stairway at regular intervals and had never seen a protruding nail.

TORT. Writ in the Superior Court dated August 26, 1936.

At the trial before *Brogna, J.*, there was a verdict for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*H. F. Tracy*, for the defendant.

*F. J. Monahan*, (*P. J. Feinberg* with him,) for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff, and the denial of the defendant's motion for a directed verdict, subject to the defendant's exception, presents the only question. It is not contended that the plaintiff was contributorily negligent.

The defendant admitted that, at the time of the plaintiff's injuries, she was the owner of the house, one tenement of which was occupied by the plaintiff as a tenant, and that she was in control of the common back stairway upon which he was injured. The jury could have found that on April 18, 1936, as the plaintiff was descending the stairway, his foot "struck" a nail, causing him to fall. The nail was about an inch from the edge of the step and between five and six inches from the wall, which was on the plaintiff's left, and it was bent to the right. There was a groove on the step about an inch long, extending from the nail hole to the right, and the nail was "about an inch out of the hole about a half inch up from the step." The plaintiff had never seen the nail before he fell. About two months before the injury, the nail was observed to be bent to the right over the groove and exposed about an inch. A few days later it was observed that the nail was in the groove, "having been hammered down into . . . [it] so that you could just see the line of the nail above the floor of the step." About a month before the injury, when the nail was observed again, it was in the same groove, about an inch out of the hole and a quarter to a half inch up from the step. The witness who testified to these observations also testified that she did not notice any nail that "stuck up at this point" prior to the time she first saw it, although she had visited the plaintiff's wife once or twice a week for a year

and eleven months before the injury, and observed the steps in going up and down, but that she noticed nothing prior to the first time that she saw the nail "because there was no reason for her to look to see whether or not anything was there." When she first noticed the nail it was "all dirty around there; it was brownish looking; she wouldn't say it was rusty; it had a dirty look about it; it wasn't a clean looking nail; it was old, rusty and dirty looking." About nine or ten weeks before the injury, the nail was observed by the plaintiff's wife to be "slanted" to the right over the groove and about a half inch out of the hole. Five or six days later she observed that the nail was bent into the groove, and about two weeks before the injury she saw that it was "sticking out" from the hole between a quarter and a half inch from the step. She also testified that she did not see the nail at any time prior to her first observation; that she swept the stairs sometimes once a week, sometimes once in two weeks, and that while sweeping, she was looking down.

We are of opinion that the jury could find that the plaintiff was injured by reason of a defect in the stairway that rendered it unsafe and dangerous, and that this condition had existed for a sufficient time before the plaintiff was injured for the defendant, in the exercise of reasonable care and diligence, to have discovered and remedied it. *Serota* v. *Salmansohn*, 256 Mass. 224. *Shavelson* v. *Marcus*, 273 Mass. 237. *Solomon* v. *Boston Elevated Railway*, 276 Mass. 139, 141. *Loudon* v. *Beaulieu*, 277 Mass. 33, 35. *Hillis* v. *Sears, Roebuck & Co.* 284 Mass. 320. *Pauley* v. *Brockton Savings Bank*, 305 Mass. 517. See *Frappier* v. *Lincoln Stores, Inc.* 279 Mass. 14; *Pastrick* v. *S. S. Kresge Co.* 288 Mass. 194, 196. Compare *Leslie* v. *Glazer*, 273 Mass. 221. The permissible findings as to the condition of the stairway distinguish the case at bar from *Jennings* v. *Tompkins*, 180 Mass. 302, and *Johnson* v. *Fainstein*, 219 Mass. 537.

"The plaintiff must recover, if at all, on the familiar principle that, in the absence, as here, of express agreement, a landlord owes a duty — breach of which would constitute

negligence — to a tenant, and to persons using the premises in his right, to exercise reasonable care to keep the part of the premises remaining in the control of the landlord in the condition with respect to safety in which they were, or to a person of ordinary observation would appear to be, at the time of the letting." *Silver* v. *Cushner*, 300 Mass. 583, 584–585. *Chambers* v. *Durling*, *ante*, 327. The plaintiff, therefore, in order to recover, had the burden of proving that at the time his tenancy began the defect that caused his injury did not or did not appear to exist. Without evidence of the condition or appearance of the stairway at that time, there is nothing upon which to base a possible breach of the defendant's duty. *Murray* v. *Lincoln*, 277 Mass. 557. *Griffin* v. *Rudnick*, 298 Mass. 82, 83. *Sullivan* v. *F. W. Woolworth Co.* 305 Mass. 378. It could have been found that the plaintiff's tenancy began in January, 1934, or that it began six or seven years prior to his injury in April, 1936, or that it began that same period of years prior to the trial of the case, which was in June, 1939. The question arises, therefore, whether the jury could find that on any of these indefinite dates the defect did not or did not appear to exist.

There was no direct evidence to show the precise date on which the tenancy began, or the condition or appearance of the stairway in question on any exact date. At best, the evidence relative to conditions or appearances goes no further than that the witnesses did not notice or see any nail. There is no direct evidence, in terms, that it was not there prior to the times when witnesses testified that they actually saw it. The probative value of testimony of witnesses as to sensory reactions depends upon the attendant circumstances. If it appears that there was no particular reason why their senses should, or should not, react, such testimony is merely negative and of no value as evidence. But, if the circumstances are such, and the witnesses are in a position where such reactions would have been likely to occur, then their failure to hear a signal that should have been given, or to see an object, is evidence from which it is permissible to draw the inference that the signal was not

given or that the object was not there to be seen. *Hough*
v. *Boston Elevated Railway*, 262 Mass. 91, 93–94, and cases
cited. *Cairney* v. *Cook*, 266 Mass. 279, 282. *Byrne* v.
*Dunn*, 296 Mass. 184, 186, 187. We put to one side the
testimony of the witness who said that she noticed nothing
because there was no reason for her to look to see whether
anything was there, and also the testimony of the plain-
tiff that he never saw the nail before he was injured, as the
record does not disclose that he had any occasion to observe
whether it was there. We think that the inference is war-
ranted that the plaintiff's wife would have seen the nail,
if it had been there, prior to about two months before the
injury when she testified that she saw it. But the diffi-
culty with her testimony is that there is nothing in the
record to show when she married the plaintiff or how long
she had lived in the "premises."

The testimony of the defendant's son remains to be con-
sidered. The jury could have found that he took care of
the property for his mother from the time she became the
owner in January, 1934, collecting rents and seeing to it
that the property was kept in repair; that he looked over
the premises, including the back stairs, usually about twice
a month; that he never saw a nail protruding from the
"floor board" or a groove thereunder "at place of accident"
at any time, although he looked at the steps regularly. In
the circumstances, the jury would have been warranted in
finding that if the nail in question had been there, he would
have seen it, and also that in January, 1934, when it could
have been found that the plaintiff became the tenant of
the defendant, the nail was not there. *Griffin* v. *Rudnick*,
298 Mass. 82, 83, 84. *Barre* v. *Epstein*, 299 Mass. 577.
*Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203,
205.

*Exceptions overruled.*