JACINTHO COUTO, administrator, vs. TRUSTEES OF NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

MANUEL COUTO vs. SAME.

Barnstable. May 4, 1942. — June 24, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Jurisdiction*, Motor vehicle case, Objection to jurisdiction. *Motor Vehicle*, Operation. *Superior Court*, Jurisdiction. *District Court*, Jurisdiction. *Practice, Civil*, Commencement of action; Improper exercise of jurisdiction; Exceptions: what questions open. *Railroad*, Grade crossing. *Negligence*, Licensee, Invited person, Grade crossing.

Under G. L. (Ter. Ed.) c. 218, § 19, as amended by St. 1934, c. 387, § 1, the Superior Court had no jurisdiction of an action, begun there, against the trustees of a railroad corporation for causing the death of the operator of a motor truck resulting from a collision between the truck and a railroad train at a grade crossing with a private way.

Evidence, relating to the character and frequency of use of a dirt road leading from a highway south of a railroad paralleling the Cape Cod Canal across the railroad to the location of work carried on by the national government at the canal and as to a renewal of planking at the crossing by railroad employees, did not warrant a finding of an invitation by the railroad to the operator or owner of a truck going to the canal to use the crossing as its business visitor.

It was the duty of this court to examine into the jurisdictional foundation under G. L. (Ter. Ed.) c. 218, § 19, as amended by St. 1934, c. 387, § 1, of an action originally brought in the Superior Court for damages caused by a collision of a railroad train with a motor vehicle, although there was no exception directed to that question.

Two ACTIONS OF TORT, the first begun by writ returnable to the Superior Court and dated November 28, 1938, and the second by writ in the First District Court of Barnstable dated April 7, 1939.

On removal of the second action to the Superior Court, the cases were tried together before *Collins*, J., who ordered entered a verdict for the defendant in each action pursuant to leave reserved.

*J. E. Lajoie,* for the plaintiffs, submitted a brief.

*J. J. Whittlesey,* for the defendants.

QUA, J. These two actions arise from a collision on June 14, 1938, between a passenger train of the defendants and a motor truck at a "private crossing" at grade in Bourne. The first action was originally brought in the Superior Court and was intended to be an action under G. L. (Ter. Ed.) c. 229, § 3, for so negligently operating the train as to cause the death of the plaintiff's intestate, who was driving the truck. The second action, originally brought in a District Court and later removed to the Superior Court, is by the truck owner for negligence of the defendants causing the demolition of the truck.

The defendants contend that the Superior Court had no jurisdiction to entertain the death case, and they further contend that the deceased was a mere licensee on the crossing without invitation from the railroad.

(1) As to jurisdiction. This point is well taken. General Laws (Ter. Ed.) c. 218, § 19, as amended by St. 1934, c. 387, § 1, contains this provision, "District courts shall have exclusive original jurisdiction of actions of tort arising out of the operation of a motor vehicle." The action for death, although brought by virtue of a statute creating a cause of action for death against railroads and street railways, is nevertheless an action of tort; and it none the less arises "out of the operation of a motor vehicle" because it could also be said to arise out of the operation of a locomotive engine. It would hardly be contended that an action resulting from a collision between a motor vehicle and a bicycle does not arise out of the operation of a motor vehicle, although it could also be said to arise out of the operation of a bicycle. The effect of the statute is not limited to cases arising out of accidents upon public ways. The statute of 1934 "was the means adopted to reduce the number of cases that were being brought in the Superior Court and thus permit the more expeditious dispatch of business by that court." *Blair* v. *Boston Elevated Railway*, 310 Mass. 1, 3-4. Its purpose was to remove from the list of cases that could be brought in the Superior Court a whole large class of tort actions — those arising out of the operation of motor vehicles — and to require them in the first instance

to be brought in the District Courts in the hope that many of them would be permitted to remain there. The difficulty is not one of venue which can be waived. It is jurisdictional. This was stated in *Pinson* v. *Potter*, 298 Mass. 109, 111, *Chandler* v. *Dunlop*, 311 Mass. 1, 4, and *Blair* v. *Boston Elevated Railway, supra*. The fact that if the action had been brought in the proper District Court it could afterwards have been removed to the Superior Court by any party under G. L. (Ter. Ed.) c. 231, § 102A, inserted by St. 1934, c. 387, § 3, does not give to the Superior Court jurisdiction of an action not so brought and removed. An entry of judgment on the merits in the Superior Court in this action, originally brought there, would be the exercise of an original jurisdiction which the amended c. 218, § 19, provides shall be exclusively lodged in District Courts. We can think of no way to enforce the 1934 act except by denying the jurisdiction of the court to entertain actions brought in violation of it. The discussions in *Thayer* v. *Shorey*, 287 Mass. 76, 79, 80, and *Universal Supply Co.* v. *Hildreth*, 287 Mass. 538, 540, 541, are not applicable here.

(2) As to invitation or license. The railroad runs south of and parallel with the Cape Cod Canal and, according to a plan in the case, is about one hundred forty feet from the bank of the canal. A dirt road, referred to as a "private road," three or four hundred feet in length runs from the crossing to a highway which is south of the railroad and which parallels the railroad and the canal. The private road and the crossing afford access from the highway to the land between the railroad and the canal. This road "was used by trucks for carting loam and other materials used in connection with the development of the south bank of the canal and land immediately north of the railroad under the supervision and control of the United States Government." There was evidence that since the fall of 1933 the road had been generally used by trucks to carry materials, at first for the construction of the "Sagamore Bridge," which spans both the canal and the railroad at this point, and later "for canal work." The defendants in answers to interrogatories in the death case stated that

a private plank crossing had been provided "for the use of those lawfully engaged in work connected with the canal"; that the United States Government was responsible for the construction and maintenance of the crossing; and that the defendants understood that the work of constructing it had been done by the Government under the supervision of railroad employees. There was no evidence of the existence of any actual right of way over the road or the crossing. There was evidence that employees of the railroad had renewed the planking on the crossing shortly before the accident. There was evidence that at the time of the accident the deceased was employed by the plaintiff Manuel Couto to drive his truck; that the truck had been hired by one Gallo, who in turn had been employed by one Byrne to haul loam from nearby fields to the bank of the canal; that Gallo had about fifteen trucks "on the job" the day of the accident; and that each truck averaged fifteen trips a day over the crossing.

There was no evidence of an invitation either to the deceased or to the truck owner to use the crossing as a business visitor to the railroad. The road to the crossing was not a public road. Its surface was "dirt." So far as appears it led only to the strip of land along the canal bank. It does not appear to have been more than about eighteen feet wide, and the planking over the main track does not appear to have been more than thirteen feet wide, although that over a neighboring side track seems to have been considerably wider. The railroad had no interest in the hauling of loam to the canal bank and derived no advantage therefrom. Although there was evidence that the crossing was much used while the bridge and canal work was going on, there was no evidence that it was used for any purposes not connected with that work, or by the public generally. The railroad did nothing to make the deceased believe himself invited rather than merely permitted to use the crossing. The appearance of the crossing as shown by photographs is that of an approach to a construction job rather than that of an ordinary railroad crossing. There was an entire absence of evidence that the railroad caused the crossing to assume the appearance of a public way, or

attempted to direct the deceased across it or undertook to protect the crossing and then failed to do so such as was held to warrant a finding of an invitation and liability in *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368. Evidence that employees of the railroad worked upon the renewal of the planking, in view of all the circumstances, is not enough. The evidence points toward permission, and does not go beyond that to warrant a finding of invitation. *Redigan* v. *Boston & Maine Railroad,* 155 Mass. 44. *Bowler* v. *Pacific Mills,* 200 Mass. 364. *Berube* v. *New York, New Haven & Hartford Railroad,* 234 Mass. 415, 419. *Murphy* v. *Avery Chemical Co.* 240 Mass. 150, 153. *Sypher* v. *Director General of Railroads,* 243 Mass. 568, 571. *Murphy* v. *Boston & Maine Railroad,* 248 Mass. 78, 81. *Statkunas* v. *L. Promboim & Son Inc.* 274 Mass. 515, 518, 519. *Gravelle* v. *New York, New Haven & Hartford Railroad,* 282 Mass. 262, 267. *Brosnan* v. *Koufman,* 294 Mass. 495, 499. *Cooley* v. *Boston & Maine Railroad,* 303 Mass. 371, 374, 376. Since the deceased was a mere licensee, the duty of the railroad was only to refrain from wilful or wanton conduct toward him. *Berube* v. *New York, New Haven & Hartford Railroad,* 234 Mass. 415, 420. *Davis* v. *New York, New Haven & Hartford Railroad,* 272 Mass. 217, 220. *Kenney* v. *Boston & Maine Railroad,* 301 Mass. 271, 275. There was neither allegation nor proof of such wilful or wanton conduct. No summary of the evidence is required to substantiate this statement. The evidence was insufficient to make out a case in either action.

In the death case the exceptions are not directed to the question of jurisdiction. But it is nevertheless our duty to examine into the jurisdictional foundation of the action as disclosed by the record. *Jones* v. *Jones,* 297 Mass. 198, 202. *Blair* v. *Boston Elevated Railway,* 310 Mass. 1. The exceptions must be dismissed. In the Superior Court the action must be dismissed. *Morse* v. *O'Hara,* 247 Mass. 183, 187. See *Henry L. Sawyer Co.* v. *Boyajian,* 303 Mass. 311; *Donnelly* v. *Montague,* 305 Mass. 14, 18–20.

In the second case the exceptions are overruled.

*So ordered.*