DAVID E. GUERTIN, administrator, *vs.* TRUSTEES OF NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

Worcester. September 22, 1947. — December 3, 1947.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Railroad*, Grade crossing. *Negligence*, Invited person, Licensee, Grade crossing.

Evidence of the appearance of a grade crossing of a dirt and gravel private way and a railroad in the country, of use of the crossing by the public for twenty-five years, and of repairs of the planking between

the rails at the crossing by the railroad corporation did not warrant a finding of an invitation by the corporation to the public to use the crossing.

TORT. Writ in the Second District Court of Southern Worcester dated February 9, 1940.

On removal to the Superior Court, the case was tried before *Goldberg,* J.

*N. W. Deering,* for the defendants.

*C. E. Tupper,* (*G. M. Kurzon* with him,) for the plaintiff.

WILKINS, J. This is an action of tort by the administrator of the estate of David E. Guertin, Junior, to recover for the death of the intestate, who was struck on April 5, 1939, by a train operated by the defendants on their tracks at a crossing over a way, known as Day's Hill Road, in Northbridge. The intestate, aged five years and six months, while visiting with his mother at a house on that road, coasted in a small four wheeled cart down an incline onto the crossing, and was instantly killed by a freight train. Three counts in the declaration were submitted to the jury who found for the plaintiff on count 1 and for the defendants on counts 2 and 3. The defendants' exceptions relate to the denial of their motion for a directed verdict on the first count.

Counts 2 and 3 were treated at the trial as based upon an allegation that the accident occurred at a public crossing. The jury's verdict on those counts under the judge's charge included a finding that the crossing was not public. Count 1 alleged that the intestate "was properly and lawfully upon Day's Hill," and that, while in the exercise of due care, he went upon the railroad crossing and was struck by the train due to the negligence of the defendants.

The case was first heard by an auditor, whose findings of fact were not final. We quote certain of his findings, which as prima facie evidence were not contradicted by other evidence at the jury trial and now must be accepted as true. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 566. "Day's Hill Road leads westerly from the Providence Road, a State highway. It crosses the railroad in reaching a community where approximately forty to fifty families reside.

It is used extensively as a travelled way for the accommodation and benefit of the residents of the community and the public in general. Vehicular, pedestrian and other traffic pass and repass over it at the crossing. It has been generally used for such purposes for more than twenty-five years. It has a gravel and dirt surface, fairly passable, having a width of fifteen feet three inches at the crossing. Prior to the year 1915, it served as a way over which cattle and other modes of travel passed to pasture and farm land then owned by a man named Bean. Gates were located at both sides of railroad crossing. A turnstile was maintained and used for foot travel. On or about 1915 a man named Day acquired the land in which the crossing was located. A development of the land into lots for building purposes was carried out by him in the vicinity west of the crossing. Dwelling and tenement houses with the necessary appurtenances were constructed, erected and since occupied by several different families. The way existing across the railroad was accepted and used by the residents of the community as the most accessible, convenient and practical mode of ingress and egress to their homes and business. The road was improved, repaired and made reasonably safe and passable for all kinds of traffic. Its surface at the crossing was raised and graded in level with the railroad tracks. In approaching the crossing from a westerly direction it has a down grade tapering to a level surface. It has a width of fifteen feet crossing the tracks and a length of fifteen feet. Cattle fence guards are located on both sides of the road fifteen feet three inches apart. The railroad also owns on west of its tracks a strip of land ten feet in width. . . . There are no warning signs, signals, or sign boards of any description visibly maintained at or near the crossing. Directly south a distance of about nine hundred feet the tracks cross Main Street. About a quarter of a mile further south the Riverdale Crossing is located. Northerly about a quarter of a mile Sutton Street crosses the railroad." All three we assume were public crossings.

There are photographs in evidence, which on the Day's Hill side of the crossing at least show a rough winding dirt

road of uneven surface, with loose gravel and some ruts, leading uphill past four scattered houses and a barn to some woods. Other apparently similar roads lead off on either side. The surface between the rails appears to be dirt or gravel, and flush with the sides of each rail are planks running the width of the crossing. There was testimony that the town had "many times" put gravel on that side of the crossing. There was no evidence, however, that the defendants had caused any work to be done at the crossing other than to the extent that this might be inferred from the testimony of the intestate's mother, who testified "that she had seen two workmen putting in planks at this crossing when it was repaired; that she knew who they were; that they used to work on the track there; that she had seen them working on the railroad track on several occasions."

The plaintiff contends that the defendants impliedly held out an invitation by which the intestate was led to enter upon the crossing. See *Sweeny v. Old Colony & Newport Railroad,* 10 Allen, 368, 373. Assuming the doctrine of the case just cited to be applicable, the plaintiff has not brought himself within it. In fundamental aspects this case cannot be distinguished from our recent decisions in *Couto v. Trustees of New York, New Haven & Hartford Railroad,* 312 Mass. 23, and *McCarthy v. Boston & Maine Railroad,* 319 Mass. 470. From the photographs the crossing had the appearance of a country crossing rather than of an ordinary railroad crossing, and Day's Hill Road did not have the appearance of a public street. The evidence did no more than allow an inference of permissive use and fell short of invitation. It could not properly have been said that the railroad caused the crossing to assume the appearance of a public way, or attempted to direct the deceased across it, or had undertaken to protect the crossing and then failed to do so. In the circumstances, evidence that employees of the railroad put in planking when the crossing was repaired was not enough. *Couto v. Trustees of New York, New Haven & Hartford Railroad,* 312 Mass. 23, 26–27. Likewise invitation could not be found in testimony as to the habitual practice of the railroad to comply with the statutory duty

to sound signals in approaching from either direction the public crossings, a practice which was not followed on this occasion at the Main Street and Riverdale crossings, or in testimony as to the absence of such signals on this occasion at the private crossing at Day's Hill Road, where, according to our understanding of the testimony, such signals had never been given, and were not required by statute. See G. L. (Ter. Ed.) c. 160, § 138. See now St. 1941, c. 273, § 2.

*Exceptions sustained.*

*Judgment for the defendants.*