CHRISTOPHER BORDEN, administrator, *vs.* THE NEW YORK,
NEW HAVEN AND HARTFORD RAILROAD COMPANY
(and four companion cases[1]).

Bristol.    April 8, 1959. — May 20, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Railroad,* Grade crossing.  *Negligence,* Grade crossing; Railroad: grade
crossing; Violation of law; Contributory.  *Motor Vehicle,* Operation,
Grade crossing.  *Evidence,* Presumptions and burden of proof.

G. L. c. 90, § 15, as appearing in St. 1951, c. 557, imposes on the operator
of a motor vehicle proceeding over a grade crossing of a railroad the
usual requirement of due care in the circumstances.  [270]

Evidence that the operator of an automobile driving on a country road
with his family approached a familiar unguarded grade crossing of a
single track railroad in the daytime, stopped within six feet of the
track at a point where he had an unobstructed view approximately
five hundred feet up the track to his right, looked to the right and then
to the left, heard and saw nothing, and then started to cross the track,
when his automobile was hit, after its front wheels had crossed both
rails, by a single self propelled Budd car which had come from his
right through scrub woods at about forty-five miles per hour and had
not sounded its horn or bell, created a question for the jury whether
or not the operator of the automobile had proceeded over the crossing
without exercising due care in violation of G. L. c. 90, § 15, as appearing
in St. 1951, c. 557.  [271–272]

In an action against a railroad with counts at common law for negligence
in operating a car so as to cause a collision with an automobile operated
by the plaintiff at a grade crossing and with counts under G. L. c. 160,
§ 232, for failure to give the signals required by § 138, the burden was
on the defendant as to all counts to prove that the plaintiff had not
exercised due care in the circumstances.  [272]

In an action against a railroad for injuries sustained in a collision between
a car of the defendant and an automobile operated by the plaintiff at a
grade crossing, failure to give the signals required by G. L. c. 160, § 138,
was evidence of the defendant's negligence supporting a common law
count in the declaration;  the remedy provided by c. 160, § 232, for
such failure was not exclusive.  [272]

---

[1] The companion cases are by Christopher Borden, administrator, Charlotte
Borden, Christina Borden, and Christopher Borden against the same de-
fendant.

FIVE ACTIONS OF TORT. Writs in the Second District Court of Bristol dated October 17, 1955.

Upon removal to the Superior Court, the actions were tried before *Forte*, J.

*William A. Torphy*, (*James P. McGuire* with him,) for the plaintiffs.

*Noel W. Deering*, for the defendant.

WHITTEMORE, J. These are five actions of tort arising out of a railroad grade crossing collision on July 22, 1955, at Copicut Road, Freetown, between a motor vehicle operated by the plaintiff Christopher Borden (hereinafter, Borden) and a single self propelled Budd car of the defendant. The other plaintiffs are Charlotte Borden, wife of Christopher, Christina Borden, a minor child, and the administrators of the estates of two other minor children. Some counts were for common law negligence; others were brought under G. L. c. 160, §§ 138 and 232. These are the plaintiffs' exceptions to the direction of verdicts for the defendant under the common law counts and the defendant's exceptions to the denial of motions for directed verdicts under the statutory counts. The jury returned verdicts for the plaintiffs on each count submitted to them.

Read most favorably for the plaintiffs, the evidence showed these facts: The crossing is an unguarded intersection of a country road with the defendant's single track line from Taunton to Fall River. Borden was driving his automobile toward Fall River from the southeast. The Budd car came from Taunton, to the northeast, that is from Borden's right. The angle of the intersection of the respective approaches is slightly greater than a right angle. Mrs. Borden was on the front seat and the three children were on the rear seat. The windows were open except for the right rear window. At about 6:35 P.M. daylight saving time Borden approached the crossing, slowed and stopped the automobile, looked to the right and then to the left, heard and saw nothing, and then started to cross — all in a matter of moments. Mrs. Borden also looked to the right and left and neither saw nor heard signs of the approaching Budd

car. Borden heard no Budd horn as he crossed. The car hit the automobile after the front wheels had crossed both tracks. At the point where Borden stopped he and his wife could see the rails to the right as far as the farthest view of rails shown in a photographic exhibit, which was about 500 feet. Borden testified that the automobile was within six feet of the track when he stopped. Borden did not look to the right after looking to the left. He and his wife were familiar with the crossing and with the Budd horn; their home was nine tenths of a mile away and the Budd horn could be heard there. The Budd car was scheduled to leave Taunton at 6:25 P.M. and was about two minutes late; the first time the engineer saw the automobile it was about 10 feet in front of him and moving, he saw a blur; the right front of the Budd car hit the automobile; his post was at the right front of the car; the seat was almost 18 inches back from the window; a door frame and door to his left interfered with his view to the left so that the nearer he got to the crossing the less he could see; a sand bank to the left of the track near to Copicut Road, the nearest part of which was 38 feet from the track, interfered with his view when some distance up the track. The photographs establish, however, that nothing in the terrain would interfere with the engineer's view when 500 feet up the track of an automobile so stopped to the southeast of the track that a person in it could see that distance up the track. An employee of the defendant, not on duty in the car, was standing, smoking, in the doorway of the "place where . . . [the engineer] was driving the train." He saw the automobile when they were about ten feet from it. It was in motion "because we could see down the track a mile and a half." The jury could have found on conflicting evidence that no horn or statutory signal was sounded.

The only testimony of the speed of the Budd car was the engineer's, that it was going about 45 miles per hour.

1. General Laws c. 160, § 138, requires that a bell or whistle be sounded at such a crossing as that at Copicut Road. The plaintiffs rely on the statute to establish the

defendant's negligence.   Section 232, as amended through St. 1949, c. 427, § 10, provided that if the required signal was not given and "such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment as provided in section two A of chapter two hundred and twenty-nine, or, if the life of a person so injured is lost, to damages recoverable in tort, as provided in said section two A, unless it is shown that, in addition to a mere want of ordinary care, the person injured or the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

The defendant, for the purposes of § 232 (but not for the common law counts), admits the significance of the evidence of neglect to give the signal, and contends that the defendant nevertheless is not liable because the plaintiffs were acting in violation of law, that is, in violation of G. L. c. 90, § 15, as amended by St. 1951, c. 557.   That statute provides that "... every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate before proceeding over the crossing, *and shall proceed over the crossing at such rate of speed and with such care as is reasonable and proper under the circumstances. . . .*"   (Emphasis added.)

Prior to the 1951 amendment, § 15 of c. 90, in place of the words emphasized in the foregoing quotation, had these words: "shall proceed cautiously over the crossing."

The applicable provision of § 232 of G. L. c. 160 has been in the statute since its enactment by St. 1871, c. 352, in words which, except for minor and inconsequential changes, are the same as those now used.   A long line of cases has established the interpretation that a plaintiff may not recover if his lack of care is such as to constitute a violation of c. 90, § 15.   The latest of these, and a case under § 15 in its earlier wording, is *Fay* v. *Boston & Maine R.R.* 338

Mass. 531. See cases cited at pages 534–535. The rule has been that if a plaintiff did not cross "cautiously" he could not recover under § 232, even though the defendant failed to give the required signal and the plaintiff was not "guilty of gross or wilful negligence."

There have been many cases dealing with the care required at grade crossings under c. 90, § 15. In a large number it has been ruled that the plaintiff's conduct was incautious as a matter of law. The facts in these cases were deemed to be such that the only reasonable alternatives to account for the plaintiff's going on the crossing as a train was approaching were that "he did not look at all" or "he looked and failed to see," as he would have, had he looked carefully, or he "saw the train and nevertheless decided to proceed." See *Rice* v. *Boston & Maine R.R.* 316 Mass. 603, 605; *Fay* v. *Boston & Maine R.R.* 338 Mass. 531, 534, and cases cited.

Perhaps the enactment of St. 1951, c. 557, reflects a belief that a requirement to cross with reasonable and proper care in the circumstances is less onerous than a requirement to cross "cautiously." But we do not find the significance of the new statute in any change of underlying principle. That principle exists apart from any statute. It is that if the plaintiff is shown so to have acted that his conduct cannot reasonably be deemed careful in the circumstances he is negligent as a matter of law.

We think the significance of the new statute is that we may approach its construction, as applied to facts in cases newly arising under it, free of the gloss of those cases decided under the old wording even though they may present similar facts. The statute makes emphatic the legislative intention that the usual principles of due care in the circumstances (see *Altman* v. *Aronson*, 231 Mass. 588, 591) be applied in railroad crossing cases. The case of *McLucas* v. *Boston & Maine R.R.* 335 Mass. 762, arose under G. L. c. 90, § 15, in its new (1951) wording but the rescript opinion was based on the plaintiff's admitted absence of care. It appeared that he went on the crossing "without any knowl-

edge of what was coming from his right side." The significance of the statutory change was not considered.

The relatively light Budd cars, operated without a separate engine, may be less audible and visible in certain circumstances than a train pulled by a steam engine. While such new factors must be allowed for by the careful driver who is about to cross tracks, they may also in some cases make it less certain that a vehicle hit on a crossing by a Budd car or train was negligently operated.

2. The photographs and a plan make it appear very probable that had Borden stopped as close to the track as was safely possible and looked to the right at the last moment before crossing he would have seen the Budd car unless light conditions were such that it was not readily distinguishable from the foliage of the scrub woods which lined the track on both sides to the northeast. A plan in evidence made by a witness for the defendant recorded the tracks, and measurements taken. The plan showed, and the testimony was, that at the track and at points 5 feet and 10 feet back from it in the direction from which Borden came the view was unobstructed for 2,300 feet. However, the defendant, properly on the evidence, argues the case on the basis that the plaintiff stopped 6 feet from the track and had a view of about 500 feet. The defendant bases its case on the contention that "[i]f Borden stopped . . . where he said he did, he must have started when the train was in plain sight and almost at the crossing," and that this shows lack of the required care. But we do not think this follows as a matter of law. At 45 miles an hour the Budd car would go 500 feet in 7.58 seconds. At 60 miles an hour it would go 500 feet in 5.68 seconds. A careful look to the left and ahead would take several seconds.

Borden may not have looked carefully, or he may not have come to a full stop as some testimony indicated. See *Gaboriault* v. *New York, N. H. & H. R.R.* 289 Mass. 36; *Verrocchi* v. *Boston & Maine R.R.* 322 Mass. 376; *Pierce* v. *New York, N. H. & H. R.R.* 329 Mass. 225, 229. But that is not the only reasonable conclusion from the testimony

taken most favorably for the plaintiffs. We think it was a jury question if it was due care in the dangerous situation of an unguarded crossing to stop six feet before the tracks, look both ways and then start across. *Hicks* v. *New York, N. H. & H. R.R.* 164 Mass. 424. Compare *Rice* v. *Boston & Maine R.R.* 316 Mass. 603. It was for the jury to say whether the train was within 500 feet of the crossing and in view when Borden looked to the right and whether he should have looked again to the right before starting. The evidence does not include testimony that he should have expected a train from the right. The inference was reasonable that such was the fact; it was not required. Borden was entitled to rely to some extent on the absence of the usual warning. *Hicks* v. *New York, N. H. & H. R.R., supra. Holmes* v. *New York Cent. R.R.* 330 Mass. 155, 159. *Bates* v. *New York, N. H. & H. R.R.* 333 Mass. 369, 373.

Where the evidence allows conflicting conclusions the burden of proof is significant. *Fitzgerald* v. *Boston & Maine R.R.* 328 Mass. 297, 301. Compare *Fay* v. *Boston & Maine R.R.* 338 Mass. 531, 535. The burden is on the defendant to show the lack of care under the common law counts (G. L. c. 231, § 85) and also under the statutory counts. *Copithorn* v. *Boston & Maine R.R.* 309 Mass. 363, 371. *Fitzgerald* v. *Boston & Maine R.R.* 328 Mass. 297, 301. Compare *Fay* v. *Boston & Maine R.R.* 338 Mass. 531, 535, and cases cited. Our cases not involving railroad crossing accidents show that in most instances the issue of contributory negligence is for the jury. See *Duff* v. *Webster,* 315 Mass. 102, 103; *Clougherty* v. *Pridham,* 338 Mass. 85, 86. The cases were properly submitted to the jury under the statutory counts.

3. The direction of verdicts under the common law counts was in error. The defendant's failure to signal in violation of the statute was evidence of negligence. *Fay* v. *Boston & Maine R.R., supra,* p. 534. There is nothing in the contention that the Legislature intended the statutory remedy to be exclusive. The statute as it has been construed provides that if the railroad is negligent in respect of signals

and the plaintiff is not lacking in due care in the circumstances the plaintiff may recover. That is close to a mere statement, if not precisely such, of the application of common law principles.

4. As the jury could have found Borden not guilty of violation of G. L. c. 90, § 15, and not contributorily negligent there is no negligence necessarily to be imputed, under G. L. c. 160, § 232, to the others injured. See, as to the common law counts, and to actions for death of an infant, G. L. c. 231, § 85D, as added by St. 1945, c. 352, § 1, and *ibid.*, § 3.

5. This is the opinion of a majority of the court. The parties stipulated that verdicts in the common law counts corresponding to those in the statutory counts should be entered in the event which this opinion records. Therefore the entry is to be

> *Plaintiffs' exceptions sustained.*
> *Defendant's exceptions overruled.*
> *Judgments on the verdicts and in*
> *accordance with the stipulation.*