RICHARD G. MAY *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     February 1, 1960. — March 31, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Railroad,* Grade crossing. *Negligence,* Contributory, Grade crossing. *Motor Vehicle,* Operation, Grade crossing.

Evidence, that the operator of an automobile on a misty, rainy evening approached from the north a familiar four track railroad grade crossing in a thickly settled, industrial area, slowed down, stopped, looked both ways and, while the automatic crossing gates were up and the warning lights were off, proceeded at slow speed onto the first track, where he had an unobstructed view for a considerable distance to his left and looked first to the right and then to the left and did not see anything approaching, that he then proceeded onto the next track, the west-

bound main track, again looking first to the right and then to the left, and then saw close by thereon a rapidly approaching westbound train whose headlight was then bright but had been dimmed shortly before, which had not sounded its bell or whistle, and which struck his automobile, did not require a ruling as matter of law that the operator of the automobile had proceeded over the crossing without exercising due care in violation of G. L. c. 90, § 15, as appearing in St. 1951, c. 557.

TORT.    Writ in the Superior Court dated October. 24, 1956.

The action was tried before *Swift*, J.

*Lawrence R. Cohen*, for the defendant.

*John Landfield*, (*Arnold Felton & Philip E. Sage* with him,) for the plaintiff.

WHITTEMORE, J.    The defendant, recognizing that there was evidence of its negligence, contends that the denial of its motion for a directed verdict was nevertheless error for the reason that the plaintiff was careless as a matter of law. The carelessness asserted is that the plaintiff drove his automobile onto the defendant's tracks at the Sherman Street grade crossing in North Cambridge into the path of an oncoming train. The accident happened shortly after 7: 30 P.M., November 23, 1955, on a misty, rainy evening. The plaintiff on his testimony was homeward bound from his place of employment. As he approached from the north the four track crossing, which he had traversed twice a day for at least five years, he slowed down from twenty miles an hour "to eighteen to fifteen . . . and on down until he got to the track." He had lowered the left front window and heard no sound of a train. The automatic crossing gates were up and the lights, which are on when the gates are down, were off. He stopped the automobile about five and one half feet from the gate at a point where his view to the left, in an easterly direction, was limited by bushes to 150 to 200 feet. He stopped "maybe half a minute." He looked first to his right "where he could see quite a ways down." He then looked to the left and as "it looked all right . . . he went on." When the front of his automobile reached the first track, going at two to four miles an hour, he looked to the right and to the left, in which direction "he could see the

same as when he was at the corner, 150 to 200 feet, because there are still bushes there and the fence away down there." He did not see anything approaching on the track and proceeded onto the next track where he looked to the right and then to the left and saw the train approaching on that track. He looked up, saw the train, or the headlight of the train which was then 280 to 300 feet away, going in his opinion sixty miles an hour. He could not remember whether the light was bright or dim, "it must have been bright." The driver of an automobile which was following the plaintiff on Sherman Street testified also that the gates were up, and no bell or whistle was heard, and in his opinion the train was approaching at sixty-five miles an hour. The light on the train was bright. The engineer and the fireman testified respectively to a speed of forty and forty-five miles per hour. The train had stopped at the Cambridge station a half mile or more to the east. The engineer testified that he had turned the headlight on bright after passing another train. He had dimmed the light when he saw the other train coming. He was just starting up after the Cambridge stop when the other train went by.

We assume that the defendant is right that when the plaintiff was crossing the first track his view of the straight track to the left could not have been obscured by bushes or a fence and that this part of his testimony is not credible. We assume also, as the defendant contends, that the plaintiff when crossing the first track "had an unobstructed view for a considerable distance to his left on the westbound main line." An exhibit shows a straight track easterly for about half a mile to a point beyond Walden Street and short of the Cambridge station. With these assumptions, however, the conclusion is not required either that the plaintiff did not look to the east when he had an unobstructed view or that, if he did so and was attentive, he must have seen and heard the approaching train. The jury could have believed that the plaintiff did look to the east while crossing the first track; that his view was unobstructed; and that the light of the train was not then near enough on this rainy, misty

night or bright enough to be distinguished as a train head-light if then in view. The jury were not obliged to believe that the headlight had been turned from dim to bright at the time or times at which due care required that the plaintiff, before crossing the track, look in its direction. We know that North Cambridge in and near Porter Square and Massachusetts Avenue is a thickly settled area with indus-trial plants and businesses, where there would be various lights visible. It is not significant that the plaintiff's first look when on the westbound main track was to his right. He testified that his last look before committing himself to cross that main track was to the east in the direction from which a train would come on that track. We do not agree with the defendant that it was negligence in law to cross these four tracks at slow speed or not to speed up when aware of the approaching train and disaster. The probable effect on a reasonable man of suddenly finding himself in the path of an express train and the reasonableness of his subsequent conduct were for the jury.

We rule that the defendant has not proved that as a matter of law the plaintiff did not "proceed over the cross-ing at such rate of speed and with such care as is reasonable and proper under the circumstances." G. L. c. 90, § 15, as amended through St. 1951, c. 557. *Borden* v. *New York, N. H. & H. R.R.* 339 Mass. 266. The plaintiff was entitled to rely to some extent on the position of the gate and absence of statutory signals. (*Ibid.*, p. 272.) Compare *Gilmore* v. *Boston & Maine R.R.* 299 Mass. 303; *Fay* v. *Boston & Maine R.R.* 338 Mass. 531.

*Exceptions overruled.*