FLORENCE NICKERSON & another *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.   January 6, 1961. — March 24, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Railroad,* Grade crossing, Statutory signals.   *Negligence,* Invited person; Grade crossing; Railroad: grade crossing; Contributory. *Motor Vehicle,* Operation, Grade crossing. *Practice,. Civil,* Exceptions: whether error harmful; Charge to jury.   *Error,* Whether error harmful.

Evidence respecting a plank and "black top" railroad grade crossing situated in a thickly settled area of a town between a dead end of a public way on one side of the railroad location and a principal street of the town on the other side warranted a finding that the railroad invited the public to use the crossing.   [311–312]

The mere presence of crossing signs at a railroad grade crossing did not warrant a finding that it was a traveled place over which a signboard was required to be maintained under G. L. c. 160, § 141, and, in the absence of proof that the crossing was a public way, no duty on the part of the railroad to give warning signals under § 138 was shown. [312–313]

A finding of negligence on the part of a railroad at common law toward the operator of an automobile with which a train collided at a grade

Nickerson *v.* Boston & Maine Railroad.

crossing, located in a thickly settled area between the end of a public way on one side of the railroad location and a principal street on the other side, was warranted by evidence that no warning signal was sounded on the train as it approached the crossing at nearly forty miles an hour.  [313]

Evidence that one of normal hearing operating an automobile whose windows were open did not hear any warning whistle, bell, or horn from a railroad train which collided with the automobile at a grade crossing warranted a finding that no such signal was sounded as the train approached the crossing.  [313]

A ruling as matter of law that there was negligence on the part of the operator of an automobile was not required on evidence that, on approaching a three track railroad grade crossing where there were no gates or flashing lights, she stopped, looked to her right and left, and then looked ahead for traffic on a street on the farther side of the crossing; that she had a view to her right for a substantial distance; that, seeing and hearing nothing, she proceeded slowly onto the crossing; and that the automobile was struck on the third track by a diesel powered Budd car train which had approached from her right at nearly forty miles an hour without sounding any warning signal.  [314]

In an action against a railroad for injuries sustained by the operator of an automobile struck by a train at a grade crossing not shown to be a crossing described in G. L. c. 160, § 138, error in charging the jury that if the railroad invited the plaintiff to use the crossing it was "obliged to sound a signal in accordance with" § 138 was, on the record, not harmless even though the evidence warranted a finding under a common law count that the defendant was negligent by reason of failure to sound a warning signal on the train as it approached the crossing.  [314–315]

Tort.  Writ in the First District Court of Eastern Middlesex dated February 24, 1958.

Upon removal to the Superior Court the action was tried before *Hudson, J.*

*Walter F. Henneberry,* for the defendant.

*Joseph M. Cohen,* (*Maurice Perlman & Irving Perlman* with him,) for the plaintiffs.

Whittemore, J.  Florence Nickerson (hereinafter the plaintiff) and her husband had verdicts in the Superior Court in an action of tort for injuries sustained by the plaintiff, for consequential damages, and for damage to the husband's automobile in a collision between the automobile and the defendant's train of two Budd cars at the School Street crossing in Saugus on June 3, 1957, about 7 A.M. These are the defendant's exceptions to the denial of a motion for directed verdicts and to parts of the charge.

The locus is shown on the accompanying sketch adapted from a blueprint put in evidence by the defendant. The jury could have found the facts hereinafter stated. The plaintiff, returning from work as a telephone operator at the Saugus exchange, was driving the automobile westerly

on School Street toward Essex Street. She stopped the car at the spur track, looked to her right, and saw no train. She could see in this direction a substantial distance, at least five or six hundred feet.[1] She then looked to her left and straight ahead "for traffic coming onto School Street from Essex Street." Seeing nothing coming she proceeded across the tracks at about ten miles per hour. She did not hear any train whistles, bells, or horns. Windows in the automobile were open; the plaintiff's hearing was normal. There was nothing to interfere with the plaintiff's view down the tracks "from the moment she started up until she saw the train just about to strike her car." When the front of the automobile was three or four feet from the southbound track she first became aware of the oncoming train, a blur to her right; "a car right on top of her to her right and then Bang." She was familiar with the crossing, knew that a train customarily came through at School Street at about that time, and had seen the cross bar sign "Railroad Crossing" on numerous occasions. She knew that there were no gates in use at that location, and no flashing lights or gate tender. The witness did not see the crossing tender at the Essex Street crossing.

The crossing tender testified that he received a warning signal which notified him that the train was approaching. He then went to the center of Essex Street and took his place between the tracks with a whistle and disk stop sign. He could see down School Street and upon seeing the plaintiff's automobile when it was twelve or fifteen feet from the spur track he blew his whistle and waved his stop sign.

Answers by the defendant to interrogatories stated speeds of the train as follows: "500 feet from the crossing [it] was 37 mph approximately, 400 feet from the crossing was 37 mph, 200 feet from the crossing was 37 mph, 100

---

[1] The plaintiff testified she could see as far as the bend in the tracks. This according to an exhibit is about 1,400 feet. The exhibit shows that the Pleasant Hills station is about 1,700 feet from School Street. There was testimony that in this distance there is "an average upgrade of three inches every hundred feet." The engineer testified that the School Street crossing could be seen for five or six hundred feet.

feet from the crossing was decreasing probably 35 mph; . . . . the speed of the train proceeding 100 feet from where the alleged collision took place was approximately 40 mph; 25 feet from the place of collision was approximately 39 to 40 mph, at the instant of collision was approximately 39 to 40 mph''; also that brakes were applied and horn sounded 125 feet from the crossing.

The engineer of the train testified as follows: He first saw the automobile when the train was about 125 feet from the School Street crossing. The speed of the train was then about thirty-eight miles an hour and the automobile was then about thirty-five feet from the spur track with its front just coming into view beyond the house. He "watched the car for a second" and when "it made no effort to stop" he put the train into emergency and blew the whistle. The train was on time and had stopped at the Pleasant Hills station and was scheduled to stop at the Cliftondale station, about 800 feet south of the crossing. The bell had been on since leaving Pleasant Hills. The "School Street crossing . . . is not a whistle crossing." See G. L. c. 160, § 139. Seeing a collision imminent he stepped back out of the cab. (The fireman testified that he did likewise.) The brakes were applied when the train was about 125 feet from the crossing and the train traveled 350 to 400 feet from the time the brakes were applied until the train stopped. The engineer was unable to state the speed at the time of the collision. The fireman's testimony was confirmatory.

Another witness for the defendant testified that a train of two Budd cars traveling at a speed of thirty-seven to thirty-eight miles per hour, on a level straight track, on a dry day, upon an emergency application of brakes in good condition, would stop in approximately 480 feet; at a speed of forty miles per hour the distance would be 540 feet.

The evidence showed that School Street as a public way extends only to the easterly line of the railroad right of way. The traveled way nevertheless continues across the tracks in the general direction shown by the extension of its

side lines on the accompanying sketch, but, as photographs show, bending somewhat to the south therefrom, at least on its northerly side, to avoid the building shown as "office" on the sketch. Between the easterly and westerly active rails of the crossing there is planking and except for the planking the crossing is "black topped." The defendant had put in and maintained the planking and maintained the surface of the crossing between lines lying respectively eighteen inches east and west of the north and southbound tracks. The planking and black top were wide enough for two cars. For seven years prior to the accident there had been no change in the general condition of the surface of the crossing. The area is thickly settled; Essex Street is one of the principal streets of the town. School Street extends for about one half mile, from the tracks to Central Street, also a main street, and there are six accepted streets which intersect with School Street in this distance.

The jury answered five special questions, thus finding (1) the train approached the School Street crossing at a rate of speed greater than was reasonable and proper; (2) the defendant failed to give the signals required by G. L. c. 160, § 138; (3) such failure contributed to the collision; (4) the plaintiff reduced speed to a reasonable and proper rate and proceeded over the crossing at such speed and with such care as were reasonable and proper in the circumstances; and (5) the plaintiff was not guilty of contributory negligence.

1. The facts permitted the application of the principle formulated in *Sweeny* v. *Old Colony & Newport R.R.* 10 Allen, 368, 375–376, and applied in *Murphy* v. *Boston & Albany R.R.* 133 Mass. 121, 125, where the court quoted the following from the *Sweeny* case. "It cannot in any just view of the evidence be said that the defendants were passive only, and gave merely a tacit license or assent to the use of the place in question as a public crossing. On the contrary, the place or crossing was situated between two streets of the city, (which are much frequented thoroughfares,) and was used by great numbers of people who had

occasion to pass from one street to the other, and it was fitted and prepared by the defendants with a convenient plank crossing, such as is usually constructed in highways, where they are crossed by the tracks of a railroad, in order to facilitate the passage of animals and vehicles over the rails. It had been so maintained by the defendants for a number of years. These facts would seem to bring the case within the principle already stated, that the license to use the crossing had been used and enjoyed under such circumstances as to amount to an inducement, held out by the defendants to persons having occasion to pass, to believe that it was a highway, and to use it as such.'' Accord, *Hanks* v. *Boston & Albany R.R.* 147 Mass. 495. See also *Chronopoulos* v. *Gil Wyner Co. Inc.* 334 Mass. 593, 597. We think the absence of a flagman, present in the *Sweeny* case and the *Murphy* case, is not a ground of distinction. Compare recent cases of country, private way, crossings. *McCarthy* v. *Boston & Maine R.R.* 319 Mass. 470. *Guertin* v. *Trustees of New York, N. H. & H. R.R.* 322 Mass. 91, 94. *Neofotistos* v. *Trustees of New York, N. H. & H. R.R.* 326 Mass. 647, 648. *Canty* v. *New York, N. H. & H. R.R.* 337 Mass. 38, 39.

It is not significant that there was evidence to show that the School Street crossing was originally established because of an obligation imposed in a deed in 1852 to the defendant's predecessor to maintain a crossing for the benefit of the grantor. Whatever the historical origin, the crossing at the time of the accident was available for public use and the jury could have found that the defendant by implication invited such use.

2. Verdicts should have been directed for the defendant under the statutory counts, 2, 4, and 6. It was not open to the jury to find that there was a violation of G. L. c. 160, § 138, in the failure to give warning signals. There was no evidence to show that the crossing was a public way, or that it was a traveled place over which a signboard was required to be maintained under c. 160, § 141. On the evidence, in view of the statute dating from 1892, now G. L. c. 160,

§ 114, no rights by prescription were shown. The existence of crossing signs was not proof that there had been an order for their erection. *Coakley* v. *Boston & Maine R.R.* 159 Mass. 32, 38.

3. Apart from the statute, the jury could have found negligence of the defendant in failing to sound the bell in approaching this crossing. The jury could have disbelieved the testimony that the bell signal was operating. The plaintiff's testimony that she heard no signal is, in the circumstances, some evidence that a signal was not given. *Slattery* v. *New York, N. H. & H. R.R.* 203 Mass. 453, 457–459. *Hough* v. *Boston Elev. Ry.* 262 Mass. 91, 95. *Shwartz* v. *Feinberg,* 306 Mass. 331, 334–335. Compare *Sutherland* v. *Scardino,* 334 Mass. 178, 182–183, and cases cited. The finding of unreasonable speed was not warranted otherwise than in conjunction with the finding of failure to signal. See *Barton* v. *New York, N. H. & H. R.R.* 332 Mass. 345, 349, and cases cited.

Verdicts could have been directed for the defendant, therefore, under the common law counts only if the ruling was required that the plaintiff was negligent.

Recent cases recognize that an operator of an automobile at a crossing at which trains may come from both directions necessarily has to take some risk in order to get across. *Borden* v. *New York, N. H. & H. R.R.* 339 Mass. 266. *May* v. *Boston & Maine R.R.* 340 Mass. 609. The operator cannot look in both directions at once. Light conditions may obscure an oncoming diesel powered Budd car train some distance off. If no signals are given, there may be insufficient noise from such a train to supply a warning. These cases recognize that there may be another cause, than the plaintiff's lack of due care in the circumstances, for a crossing collision between a train and an automobile, even though the circumstances tend strongly to show the plaintiff's lack of care. The *Borden* case refers to the significance of burden of proof where evidence allows conflicting conclusions and to the cases not involving railroad crossing accidents which show that in most instances the issue of contributory negligence is for the jury.

The plaintiff had to cross three tracks, and to have some regard for traffic on Essex Street. Apart from the statute, she had a right to rely to some extent on an expectation that a signal would be sounded at such a crossing. At forty miles per hour the train would have traveled 500 feet in approximately eight and one half seconds. In the circumstances the evidence tending to show the plaintiff's lack of due care did not warrant a ruling of law to that effect. In such a case, however, instructions are in order to make fully clear to the jury that the care required of the plaintiff is commensurate with the obvious danger.

4. The judge charged in respect of the common law counts that a violation of c. 160, § 138, would be evidence of negligence, and, as applicable to all counts, erroneously charged that "[i]f there was . . . [an] implied invitation for . . . [the plaintiff] to cross . . . [the defendant] was obliged to sound a signal in accordance with c. 160, § 138, . . . [but otherwise] she would not be entitled to a warning . . . and c. 160, § 138, would not apply." The implied invitation was necessary, as the judge had rightly charged, to impose on the defendant a duty of reasonable care, but it did not affect the character of the crossing for purposes of the statute. Although the defendant apart from the statute could have been found negligent in not sounding a signal, we cannot hold that there was no prejudice. Special questions do not obviate proper instructions on material issues. See *Jewett* v. *Dow,* 333 Mass. 187, 191. In the context of the charge on the statutory counts, part of which is next referred to, and the special questions, the absence of required statutory signals could have been deemed by the jury of controlling importance.

The judge charged in respect of the counts under G. L. c. 160, § 232, that, if the defendant did not sound a signal as required by § 138, "a person may be ordinarily negligent . . . and still recover . . . . In other words, if you find there was a violation of that section . . ., in order for Mrs. Nickerson to be defeated . . . it would be necessary for the railroad to prove that she was guilty of wilful negligence

or was acting in violation of the law and that such gross or wilful negligence or unlawful act contributed to the injury. . . ." There was no exposition of the confusing rule that violation of the penal statute, G. L. c. 90, § 15, which required of the plaintiff "such rate of speed and . . . such care as is reasonable and proper under the circumstances . . ." is a violation of law for purposes of c. 160, § 232, so that if the jury finds that the plaintiff was negligent, the defendant need *not* prove the plaintiff's "gross or wilful negligence" in spite of the reference thereto in § 232. See *Fay* v. *Boston & Maine R.R.* 338 Mass. 531, 535, 540–541; *Borden* v. *New York, N. H. & H. R.R.* 339 Mass. 266, 269–270.

The defendant in the circumstances is entitled to a retrial of the issues under the common law counts.

> *Exceptions sustained.*
> *Judgment for the defendant on*
> *counts 2, 4, and 6.*