KONSTANTINE J. CHRONOPOULOS & another *vs.*
GIL WYNER CO., INC.

Middlesex. May 8, 1956. — October 10, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Invited person, Trench, Contractor, Contributory.

Evidence respecting a trench excavated by a contractor in park land open to the public along a parkway up to, across and beyond the entrance from the parkway into other streets, so that access to those streets was cut off or substantially curtailed, and a structure of logs and planks placed across the trench at a point in the park land near the entrance to the streets warranted a finding in the circumstances that the contractor had impliedly invited or had induced a boy as a member of the public, while on his way from a schoolhouse in the vicinity to one of the blocked streets, to cross the trench on such structure and owed him a duty of exercising reasonable care for his safety in connection with the structure. [597]

Evidence that a structure across a trench excavated by a contractor consisted of crosswise and lengthwise logs supporting three planks whose ends overlapped the lengthwise logs, that the first and third planks were secured but that the second, placed to the side of the other two, was not secured, and that there were no hand rails, guards, or sign on the structure warranted a finding of negligence of the contractor toward an invitee walking across the structure who fell into the trench

when the second plank "tilted up" as he reached its far end, and did not require a ruling that he was guilty of contributory negligence. [598] The fact that a structure of logs and planks across a trench excavated by a contractor was intended by him only for the use of his workmen would not preclude a finding that a boy injured while crossing the trench on the structure was an invitee of the contractor if the structure was erected and maintained in such a way as to lead the boy reasonably to believe that it was intended for his use as a member of the public. [598]

TORT. Writ in the Superior Court dated July 18, 1950.

The action was tried before *Goldberg, J.*

In this court the case was argued before *Ronan, Wilkins, Spalding, & Williams, JJ.,* and afterwards was submitted on briefs to all the Justices.

*Walter F. Henneberry,* for the defendant.

*Paul E. Troy,* for the plaintiffs.

SPALDING, J. This is an action of tort wherein the plaintiff Konstantine J. Chronopoulos (hereinafter referred to as the plaintiff) seeks to recover for personal injuries alleged to have been caused by the defendant's negligence, and the plaintiff's father seeks consequential damages. The case was submitted to a jury who returned verdicts for both plaintiffs. The case comes here on the defendant's exceptions to the denial of its motion for directed verdicts and to the refusal of the judge to grant two of its requests for instructions.

On March 22, 1950, the defendant, pursuant to a contract with the metropolitan district commission, was engaged in the installation of a water main in Melrose along a course surveyed by the commission. Excavating for the laying of the pipe had been going on for some time prior. The excavation was within the confines of the Lynn Fells Parkway (a parkway under the commission's control) until it reached a point near Tremont Street. There it crossed Tremont Street, entered land owned by the park department of Melrose (known as Ell Pond Park), and continued through the park land, which was on the south side of the parkway, up to the intersection of Melrose and Crystal streets. The distance from Tremont Street to the inter-

section of Melrose and Crystal streets was approximately 2,250 feet. The distance from a point in front of Melrose High School, which faced the parkway on the north side, was 1,026 feet.

The plaintiff, aged seventeen or eighteen, was a senior at Melrose High School. Early in the afternoon of March 22, 1950, after school had closed, the plaintiff and three of his companions were on their way home. The usual route, and that pursued on the day of the accident, was to walk along the north side of the parkway to the intersection of Melrose and Crystal streets, then to cross the parkway and proceed south along one of these streets to their respective homes. At this time a deep trench, which had been dug by the defendant, extended all the way across the entrance of Crystal and Melrose streets on the south side of the parkway and continued up the parkway beyond these streets.

When the plaintiff and his companions arrived at the trench they observed a structure running across it which may be described as follows. Two logs extended across the trench from the parkway side to the Crystal Street side. On top of these logs were two more logs which ran lengthwise with the trench. Extending across the trench and supported by the logs were three planks. One plank ran from the sidewalk of the parkway to the first lengthwise log. The second plank ran from the first lengthwise log to the second. The third ran from the second log to the Crystal Street side of the trench. The second plank was to the left or east of the first and third. The ends of these planks overlapped and extended two or three feet beyond the supporting logs. The planks were about ten or twelve inches wide, about three inches thick, and ten to twelve feet in length. There were no hand rails or guards on either side of the structure. At the time of the accident men were working in the area both along and in the trench. Along both sides of the trench there were piles of dirt, lumber, pipes, and pieces of machinery; but opposite the parkway side of the structure "the piles of dirt had been flattened out . . . [and] it was about level." There was evidence that the first and third

planks were secured but that the second plank was not secured. According to one of the plaintiff's companions "there was no place [other than this structure] where he could cross the excavation from the parkway into Melrose and Crystal streets on the south and east so far as he could see."

Upon arriving at the structure, the location of which was about twenty-five feet west of the entrance to Crystal Street, the plaintiff and his companions proceeded to cross it. Prior to doing so they had observed twenty to thirty children crossing it. Three of the plaintiff's companions preceded him and crossed safely. However, when the plaintiff reached the far end of the second plank it "tilted up" and both he and the plank fell into the trench, and the plaintiff was injured. There was no barricade or sign at the point where the plaintiff and his companions crossed the structure.

The defendant conceded that it was in "control of the entire job." And it was agreed that the public had a right to use and pass over Ell Pond Park. Under its contract with the metropolitan district commission the defendant agreed to "provide and maintain at . . . [its] own expense such temporary bridges as may be necessary."

The pivotal question is the status of the plaintiff when he was injured. If he was a trespasser or a bare licensee he cannot, of course, recover, for there is no evidence of wanton or reckless conduct on the part of the defendant. *Couto* v. *Trustees of New York, New Haven & Hartford Railroad,* 312 Mass. 23, 27. *Sheehan* v. *Goriansky,* 317 Mass. 10, 14–15. The plaintiff does not argue the contrary and bases his case on negligence. To recover for ordinary negligence the plaintiff is compelled to rely upon an invitation to him as a member of the public. *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368. *Davis* v. *Central Congregational Society,* 129 Mass. 367. *Murphy* v. *Boston & Albany Railroad,* 133 Mass. 121. *Hanks* v. *Boston & Albany Railroad,* 147 Mass. 495. *Holmes* v. *Drew,* 151 Mass. 578. *Plummer* v. *Dill,* 156 Mass. 426, 430. *Chenery* v. *Fitchburg Railroad,*

160 Mass. 211, 213. *Moffatt* v. *Kenny,* 174 Mass. 311, 314–315. *D'Amico* v. *Boston,* 176 Mass. 599. *Conroy* v. *Allston Storage Warehouse Inc.* 292 Mass. 133, 135. See Prosser on Torts (2d ed.) § 78; James, Tort Liability of Occupiers of Land, 63 Yale L. J. 605, 612–619. Restatement: Torts, § 384. The rule established by these cases is that where a defendant by his conduct has induced the public to use a way in the belief that it is a public street or way which all have a right to use, he owes to those using the street or way the duty of exercising reasonable care for their safety. As the court said per Knowlton, J., in *Plummer* v. *Dill, supra,* at page 430, "The inducement, or implied invitation, in these cases, is not to come to a place of business fitted up by the defendant for traffic, to which those only are invited who will come to do business with the occupant, nor is it to come by permission, or favor, or license, but it is to come as one of the public and enjoy a public right, in the enjoyment of which one may expect to be protected. The liability in such a case should be coextensive with the inducement or implied invitation."

The excavation into which the plaintiff fell was in a park which the public had a right to use and pass over. The excavation had the effect of cutting off, or at least substantially curtailing, access to a public way. There was evidence that the structure from which the plaintiff fell provided the only way, so far as one could see, where passage across the excavation from the parkway into Melrose and Crystal streets was possible. No barriers had been placed to prevent the public from using the structure as a bridge; nor were there any signs prohibiting such use. Others in the presence of the defendant's workmen had preceded the plaintiff across the trench without any attempt being made to stop them. Doubtless to many persons a structure of the sort here involved would hardly appear to be a crossing designed for public travel. Still, a majority of the court are of opinion that it cannot be said as matter of law, in the light of all the circumstances, that there was no invitation or inducement. That was a question of fact for the jury.

On the issue of invitation the case at bar more closely resembles cases such as *Holmes* v. *Drew,* 151 Mass. 578, and *D'Amico* v. *Boston,* 176 Mass. 599, than it does *Stevens* v. *Nichols,* 155 Mass. 472, and *Luscombe* v. *E. F. Kemp, Inc.* 323 Mass. 53, on which the defendant relies. Likewise the questions of the plaintiff's due care and whether the structure was negligently erected or maintained by the defendant were questions of fact. The judge, therefore, rightly denied the defendant's motion for directed verdicts.

The defendant excepted to the failure of the judge to give its requests for instructions numbered 2 and 7. [1] It may be seriously doubted whether these exceptions have been argued. With respect to each there is merely one sentence, unaccompanied by citation, which hardly says any more than that the request should have been given. See Rule 15 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 699. *Burgess* v. *Giovannucci,* 314 Mass. 252, 254. *Donahue* v. *Dal, Inc.* 314 Mass. 460, 464. Assuming, without deciding, that this constituted argument, we are of opinion that there was no error. The point raised by request numbered 2 was adequately covered by the charge. *Squires* v. *Fraska,* 301 Mass. 474, 476. The seventh request was not a correct statement of the law. The question was not whether the defendant intended the planks only for the use of its own workmen but whether the structure was erected and maintained in such a way as to lead the plaintiff reasonably to believe that it was intended as a crossing to be used by the general public.

*Exceptions overruled.*

---

[1] These are: "2. If it is found as a fact that the defendant was performing its work in accordance with good workmanlike practices, consistent with such an undertaking, even though the plaintiff . . . [was] injured during the process of such work, then the defendant is not liable." "7. If the planks and the structure which was holding the planks were intended for the use by the workmen employed on the project, and needed for their convenience and protection, and were not intended for use by the general public, or the plaintiff, then the plaintiffs are not entitled to recover in this action."