NELLIE GILL *vs.* EARL M. CARRIER.

Suffolk.    March 3, 1958. — April 9, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Negligence*, Invited person, Excavation.

Evidence of the circumstances in which a woman member of the public descending unbarricaded public steps in a large city at night saw at the bottom a steep drop where new steps were being constructed by a contractor and there were two planks, "one this way and one the other," and, thinking one of the planks "was to step on," stepped on it and fell when it gave way did not warrant a finding that as against the contractor she had the status of an invitee at the place where she fell, even if the planks were placed there by the contractor and he induced her to descend the steps by failing to maintain a barricade or warning at the top.

TORT.    Writ in the Superior Court dated November 16, 1953..

The action was tried before *Forte*, J.

*John A. Ryan*, for the plaintiff.

*Salvatore F. Stramondo*, for the defendant.

WHITTEMORE, J.    This is the plaintiff's exception to the direction of a verdict for the defendant.    Taking the evidence most favorably for the plaintiff the jury could have found facts stated in this and following paragraphs.    The plaintiff shortly after 9:00 P.M. on April 30, 1953, was crossing the grounds of the State House in Boston to go to her home on Temple Street.    "As she was going around by the State House she met three students coming up from Suffolk Law School, indicating to her that the steps leading up from Derne Street [which she knew had been blocked off at prior times] were open to the public."    She walked down the steps and saw at the bottom a steep drop to the ground of about three feet.    There was a big street light directly across the street the light from which was "all right when it's cement,

but when it's dark earth it's hard to see." About a foot below the bottom step there were two planks, "one this way and one the other." One plank was resting on something, "on what she did not . . . know." She thought this plank was to step on; she stepped on it and it gave way. She fell and was injured. "The place where she fell was at the bottom of the steps where two new steps were being made."

"The stairway in question is one to which the public ordinarily have a right of access." On April 30, and prior days, between the hours of 8:00 A.M. and 5:00 P.M., the defendant, under a contract with the Commonwealth, had been making repairs and alterations in the courtyard of the State House and on the Derne Street steps.

The plaintiff had known that construction work had been going on in the street and on the stairs for some months and on prior occasions had seen the area blocked off by sawhorses with red lights on them on top of the stairway and also blocking the entry from Derne Street. At the time of the accident there were no signs at the top of the stairs, and no horses with lanterns on them. "She went down the stairs to the bottom and did not see any horses nor any barricade . . . ." The plaintiff before descending the steps had seen sawhorses at the top of the steps "pushed aside." There were always horses in the area at the top of the steps and "for use in partitioning off the cars . . . when the Legislature is in the State House."

There was no error in directing a verdict for the defendant.

The obvious excavation which the plaintiff saw gave her notice that at least so much of the area of the steps, and the adjacent street, as was within the excavation had been withdrawn from public use so that whatever rights she had on the unbarred steps, as an invitee in the general public right, ended there. See *Chronopoulos* v. *Gil Wyner Co. Inc.* 334 Mass. 593.

The question here is like that presented in the *Chronopoulos* case where the defendant had placed three planks across a trench so as to make a crossing, at the point of

usual crossing, from a parkway which the public had the right to use and pass over, to a public way. A majority of the court (pages 597–598) held that it was a jury question whether in the circumstances the presence of the planks was an invitation or inducement to the plaintiff to cross the trench. But in that case the accident occurred during working hours and there were workmen in the area both along and in the trench; the defendant "was in control of the entire job"; the inference was reasonably open that the defendant had placed and maintained the planks; twenty to thirty school children had crossed ahead of the plaintiff, and no attempt had been made to stop them. In the case before the court there is no direct evidence that the defendant placed the planks across the trench. The plaintiff is, we think, entitled to the reasonable inference that the planks were planks of the defendant and were at the site for purposes connected with the job. But even if it be granted that it is the slightly more reasonable inference that the planks were placed where or about where they were by the defendant's employees rather than by intermeddlers, we think the presence of the planks in the position described could not reasonably be taken as an invitation from the defendant to members of the public to cross. In the *Chronopoulos* case we said of the three planks (page 597), "Doubtless to many persons a structure of the sort here involved would hardly appear to be a crossing designed for public travel," but that in the circumstances it could not be held as a matter of law not to be such. Here the circumstances are sufficiently different to require the contrary ruling. The excavation was near the center of a populous city. There was only a single plank which the plaintiff "thought . . . was to step on"; it was uncertainly based; the other plank was "the other" way; there was no rail or guard and no accompanying light. It is not reasonable to conclude that at such a place such a plank could have been intended for public crossing in the nighttime with no attendants about. The plaintiff in crossing was either a licensee or a trespasser

who cannot recover in the absence of a showing of wanton or reckless conduct.

We do not think that the absence of a warning at the top of the steps requires a different ruling. Although there was evidence pointing the other way, we cannot say that the jury could not have concluded that the plaintiff, when at the top of the steps, reasonably expected to find a crossing of some kind, intended for public use, at the foot of the steps. And we assume that the jury could have found, from the absence of a barrier or warning at about 9:00 P.M., that the defendant had failed in his duty in not placing sawhorses and lanterns. There is no evidence that any such had been placed on April 30. If there had been such evidence, we assume that it could have been found that the defendant was negligent in not checking to see that they were kept in place. *Morrison* v. *Quincy Market Cold Storage & Warehouse Co.* 323 Mass. 536. Thus it could have been found that the defendant induced the plaintiff to descend the steps. But we do not think this can be deemed, in law, an inducement or invitation to cross at a place which could not reasonably be deemed a public crossing. In the light of the situation seen by the plaintiff at the bottom of the steps, the reasonable explanation of the absence of sawhorses at the top was either the defendant's lack of care, or intermeddling; it was not that there was a public crossing. On the evidence there is, of course, no basis for concluding that such detour as was required if the trench were not crossed would have been so burdensome that the plaintiff had no alternative course which reasonably she should have been expected to take.

In *Winship* v. *Boston*, 201 Mass. 273, the plaintiff, though aware of the excavation, was walking on the public way beside the excavation, and not, as here, trying to cross it, and could recover for the defendant's negligence. Compare also *Norwood* v. *Somerville*, 159 Mass. 105.

We need not determine whether the plaintiff was contributorily negligent as a matter of law.

*Exceptions overruled.*