**Francis L. DOBB, etc., Plaintiff-Appellant,**

v.

**George P. BAKER et al., Defendants-Appellees.**

**No. 74–1164.**

United States Court of Appeals, First Circuit.

Argued Sept. 4, 1974.

Decided Nov. 6, 1974.

Arthur Goldstein, Worcester, Mass., with whom Goldstein & Goldstein, Worcester, Mass., was on brief, for appellant.

David W. Walsh, Boston, Mass., with whom Richard J. Ferriter, Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge and CLARY,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant brought an action in the district court for injuries sustained when his arm was run over by a train in the Penn Central Railroad Yard at Framingham, Massachusetts. The defendants are the Trustees in Bankruptcy of the Penn Central Transportation Company (Penn) and the engineer of the train which struck appellant. Jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332. The district court, after considering the depositions of the plaintiff and several employees of Penn including the defendant engineer, granted defendants' motion for summary judgment. Fed.R.Civ.P. 56(b). We examine the record in the light most favorable to plaintiff to determine whether there exist any genuine issues of material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Peckham v. Ronrico Corp., 171 F.2d 653, 657 (1st Cir. 1948).

The district court found the following facts, which are essentially undisputed on this appeal. Appellant wandered into the freight yard of defendants' railroad in Framingham, Massachusetts at 2 a. m. on the morning of June 15, 1972. He was in a very depressed frame of mind, and earlier in the day had been drinking. He stumbled on a track and fell, hitting his head. He lay parallel to the track unconscious for an undisclosed length of time, but less than twenty-five minutes. Subsequently, a train consisting of one refrigerator car and an engine came down the track and ran over appellant's right arm, causing it to be severed near the shoulder.

The section of the yard where the accident occurred is not lighted. It is close to Waverly Street and about on the same grade. There are no fences separating the train yard from Waverly Street. Occasionally, strangers had been seen prior to the accident wandering across the tracks, mostly on Sunday afternoons, but never at night.

The train was proceeding at five or six miles an hour. The engine was pushing the refrigerator car and the engineer's view of the track ahead of him was obstructed by the car. The engine's headlight was on, but its beam was also obstructed by the refrigerator car and did not illuminate the tracks ahead of the train. Koslowsky, the conductor, was sitting next to Rita, the engineer. Brakeman Forbes was standing on a platform at the front of the boxcar. Brakeman Calvert was standing on the forward step of the engine. The train had passed over these tracks approximately twenty-five minutes previously, and no one on the train had observed any strangers in the train yard.

Forbes observed a light-colored object near the side of the track, which he first thought was a piece of paper. When the leading edge of the boxcar was about 25 feet from the object, Forbes realized that it was a man lying close to the track. He immediately made a vigorous "washout" signal with his hand lantern, which was a signal for an immediate stop. Koslowsky, the conductor, saw the signal when it was given and immediately directed Rita, the engineer, to stop the train, which he did. Forbes ran back to the Station Master's office to call for assistance. When the train came to a stop, the rear wheels of the engine were

* From the Eastern District of Pennsylvania sitting by designation.

about 10 feet from where appellant was lying. The combined length of the car and the engine was approximately 90 feet.

Appellant was admittedly a trespasser in the freight yard. His right to recover turns, therefore, upon the nature of the duty towards trespassers which Massachusetts imposes upon those in possession of land. *See* Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941); Tessier v. State Farm Mutual Insurance Co., 334 F.Supp. 807, 808 (D.Mass.1971), aff'd, 458 F.2d 1299 (1st Cir. 1972). In Massachusetts, it has long been established that, in the absence of willful or wanton conduct, a trespasser may not recover against a possessor of land for injuries suffered on the latter's property. *See, e. g.,* Chronopoulos v. Gil Wyner Co., 334 Mass. 593, 137 N.E.2d 667 (1956); Scott v. Boston Elevated Ry., 318 Mass. 31, 60 N.E.2d 5 (1945). Under this standard there could be no recovery upon the undisputed facts here.

The Massachusetts Supreme Judicial Court recently abolished the traditional common law distinctions between classes of invitees and licensees, extending the duty of ordinary care to all lawful visitors. Mounsey v. Ellard, —— Mass. ——, 297 N.E.2d 43 (1973). But that court made it clear that it was not ready to include trespassers among those persons to whom the duty of ordinary care was to be extended. The court indicated that refinement, if any, of the rules regarding trespassers could be left to "later cases." —— Mass. at ——, 297 N.E.2d at 51–52 n. 7.

Appellant asserts that in the first case since *Mounsey* to consider the issue of tort recovery for injured trespassers, Pridgen v. Boston Housing Authority, —— Mass. ——, 308 N.E.2d 467 (1974), the Supreme Judicial Court decided to sweep away all the distinctions between trespassers and lawful visitors that were expressly retained in *Mounsey*. The district court rejected this broad characterization of *Pridgen.* It interpreted that case as imposing a duty of ordinary care towards trespassers only after their presence becomes known to the landowner or his agents. Applying this standard, the district court found nothing to indicate that defendants had failed to exercise due care towards the appellant after Forbes had perceived him lying alongside the tracks.

We agree that *Pridgen* goes no further than to pronounce a standard of care owed to *perceived* trespassers and that otherwise the traditional requirement of establishing willful or wanton conduct remains undisturbed. *Compare* Pridgen v. Boston Housing Authority, —— Mass. ——, ——, 308 N.E.2d 467, 477–478 (1974), with Mounsey v. Ellard, —— Mass. ——, ——, 297 N.E.2d 43, 51 n. 7 (1973). Indeed, *Pridgen* was a case involving an employee who, though aware that a child had been trapped on top of an elevator, did not turn off the power. The Massachusetts court held that "the same common duty of reasonable care [owed to lawful visitors] is owed by an owner to a trespasser who has become helplessly trapped on the premises to the owner's knowledge." —— Mass. at ——, 308 N.E.2d at 478. Thus, appellant could recover for any negligence attributable to defendants after they had detected his presence in the freight yard.[1] But, as the district court concluded, there was nothing to support a finding of negligence at that time. Once they saw him, the trainmen acted quickly to halt the train and to render assistance. Since there was no indication that defendants may have vio-

---

1. While *Pridgen* dealt only with a perceived trespasser, the court cited sections 336 and 338 of the Restatement (Second) of Torts (1965), which define a duty of care not only to known trespassers but to those of whom a landowner has reason to know. Even assuming that Massachusetts endorses the Restatement view fully (which is not clear), the present facts do not create a jury issue on whether defendants had reason to know of appellant's presence within the yard. The occasional presence of strangers in the yard would be insufficient to alert defendants that an unconscious man might be lying by the tracks in the middle of the night.

lated any duty of care they owed to appellant, the district court acted properly in entering summary judgment.

As a further ground of liability, appellant argues that his injury was caused by defendants' violation of 49 C. F.R. § 230.231(e),[2] a regulation enacted under the Federal Boiler Inspection Act, 45 U.S.C. §§ 22–34. Literally the regulation does no more than prescribe the type of light a locomotive must carry after sunset, a requirement which defendants' engine met. But appellant asserts that it should be read to forbid the practice of pushing a car or cars ahead of a yard locomotive in such a manner as to obscure the latter's light. *Cf.* Lilly v. Grand Trunk Western R.R., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943).

■ Appellant did not present this claim to the district court. Ordinarily we will not reverse a judgment of the district court on a ground not urged upon or considered by it. Bird v. United States, 241 F.2d 516, 520–521 (1st Cir. 1957); Roto-Lith, Ltd. v. F. P. Barlett & Co., 297 F.2d 497, 500 (1st Cir. 1962). Only in "exceptional cases or particular circumstances . . . where injustice might otherwise result" will we depart from this principle. *Bird, supra,* 241 F.2d at 520, quoting Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L. Ed. 1037 (1941).

In a personal injury case, we of course have sympathy for the injured plaintiff. But that is not reason enough to entertain contentions which litigants fail to raise below. Perhaps we would make an exception if the new ground were so compelling as virtually to insure appellant's success. But while appellant's new contention is not frivolous, neither is it self-evident.

■ Appellant does not assert, nor could he, that the alleged violation of the Boiler Inspection Act creates a separate federal cause of action. *Cf.* Crane v. Cedar Rapids & Iowa City Ry., 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969). He seems rather to contend that in a negligence action based upon Massachusetts law a prima facie case can be established by showing that a federal safety regulation was violated despite the plaintiff's status as a trespasser. This is an interesting contention. But it is open to question whether the existence of such a regulation would lead Massachusetts to broaden the scope of the duty owed by a possessor of land to a trespasser. In older cases dealing with state elevator regulations, the Massachusetts courts held that violations of such regulations did not give rise to civil causes of action where there was no common law duty to exercise due care. *See, e. g.,* Carroll v. Hemenway, 315 Mass. 45, 46, 51 N.E.2d 952, 953 (1943).

■ Moreover, although we do not decide the issue, it is not readily apparent that the facts of this case establish a violation of the federal regulation. Appellant's interpretation would appear to prohibit a yard locomotive from pushing cars either forward or in reverse at night. No regulations requiring lights on the front of such cars have been shown to us, and it may be that the regulation was not intended to preclude these practices. Appellees, during oral argument, attempted to present certain operating rules, purportedly approved by a governmental body, which, it was contended, tended to show agency acquiescence in the practice complained of here. We did not receive them and remain unclear as to their materiality and force. It is possible, however, that materials of this nature and other extrinsic evidence of railroad and ICC practices presented for the limited purpose of explicating the regulation might have been helpful

---

2. "*Yard locomotives.* Each locomotive used in yard service between sunset and sunrise shall have two lights, one located on the front of the locomotive and one on the rear, each of which shall enable a person in the cab of the locomotive under the conditions, including visual capacity, set forth in paragraph (a) of this section, to see a dark object such as there described for a distance of at least 300 feet ahead and in front of such headlight; and such headlights must be maintained in good condition."

The regulation has the force of federal law. *See* Lilly v. Grand Trunk Western R. R., 317 U.S. 481, 63 S.Ct. 347 (1943).

and even determinative. *See* 2A Sutherland, Statutory Construction § 49.03 (4th ed. C. Sands 1973); *cf.* United States v. Groupp, 459 F.2d 178, 181 (1st Cir. 1972). But this court is not equipped to screen and receive evidence. That is the function of the district court and is a further reason why we would be ill-advised to construe the regulation without the benefit of district court proceedings.

Finally, we note that even were appellant to present his alternative claim to a jury he faces what appears to be an uphill battle. Appellant's own apparent negligence would seem to be a formidable obstacle, and a jury would have to be convinced that the alleged violation of the federal regulation was the proximate cause of his injuries.[3]

Without ruling on the merits of appellant's contention, we are persuaded that neither justice nor sound practice justify our departing from the normal rule against entertaining new matters on appeal.

The judgment of the district court is affirmed.

3. The regulation requires a light sufficient to enable a person in the cab to see an *erect* man at a distance of 300 feet. *See* 49 C.F.R. § 230.231(a). Appellant, however, was prone alongside the tracks. The engine crew said they saw a light-colored object by the tracks which they first took to be a piece of paper. Defendants argue that even had the engine's light been unobstructed, appellant would still not have been detected until too late to prevent his injury.