ALAN P. SCHOFIELD vs. GEORGE L. MERRILL & others.[1]

Middlesex.   January 5, 1981. — May 13, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence*, Trespasser, One owning or controlling real estate.

In an action by an adult trespasser to recover damages for bodily injury
    which he suffered as a result of jumping into an abandoned quarry in
    which others were swimming on the defendants' land, this court de-
    clined to alter the principle that a landowner is not liable to an adult
    trespasser for injuries resulting from the landowner's negligence unless
    the trespasser is known to be trapped in a position of peril.  [245-254]
    LIACOS, J., with whom WILKINS and ABRAMS, JJ., join, dissenting.

CIVIL ACTION commenced in the Superior Court on May
22, 1975.

A motion for summary judgment was heard by *Porada*, J.,
a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*J. Sheffield Dow* (*Louis Fox* with him) for the plaintiff.

*Michael E. Mone* (*Patricia L. Kelly* with him) for the
defendants.

O'CONNOR, J.   The plaintiff's amended complaint alleges
that he was injured due to the negligence of the defendants
"in the care, operation and maintenance" of land owned
and controlled by them.   The defendants filed a motion for
summary judgment that was allowed on the basis of deposi-
tions of the plaintiff and of the defendant George L. Merrill.
The uncontroverted material facts are that the plaintiff sus-
tained  bodily  injury  on  the  defendants'  land,  where  the

---

[1] Russell W. Merrill, David R. Merrill, and Grace E. Jones.

plaintiff was an adult trespasser who was not helplessly trapped. The parties stipulated that the defendants' conduct was not wilful, wanton and reckless. The question before us is whether we should abolish our common law rule that a landowner is not liable to an adult trespasser for injuries resulting from the landowner's negligence. We conclude that the rule should be retained, and we affirm the judgment of the Superior Court.

The following facts are extracted from the record, which includes depositions of the plaintiff and of the defendant George L. Merrill. On June 22, 1974, the plaintiff, then twenty-three years old, went with four friends to a section of Westford known as Merrill's Quarry, an abandoned quarry excavation filled with water. The plaintiff had never visited the area before. He saw no barrier or warning signs on that day. He knew that neither he nor his friends owned the land. Other people were swimming in the quarry. The plaintiff jumped into the water from a height of about twenty feet, hitting a ledge of rock below the water surface. As a result of the impact, he sustained a fracture in the thoracic spine that has left him with a limited ability to walk and impaired sexual, pulmonary, and bladder functions.

The quarry site had belonged to the defendants' family for about 100 years and had been leased for use as a quarry until 1968. After quarrying ceased, the excavation filled with rain water and was nearly full at the time of the plaintiff's accident. There were repeated efforts to prevent trespassers from entering the quarry site. The defendant George Merrill and his brother blocked the dirt access road with a steel cable anchored to two oak trees and a granite pillar. When the cable and locks were taken down by trespassers, George Merrill or his brother repaired or replaced them. The defendants frequently had trespassers arrested during the summers from 1969 to 1974.

The traditional rule in this Commonwealth is that a trespasser is entitled to no greater duty of care from one with a right of control over land (typically the landowner) than that he refrain from wilful, wanton or reckless disregard for

the trespasser's safety. *Chronopoulos* v. *Gil Wyner Co.*, 334 Mass. 593, 596 (1956). *Sweeny* v. *Old Colony & Newport R.R.*, 10 Allen 368, 372 (1865).[2] In *Mounsey* v. *Ellard*, 363 Mass. 693 (1973), we discarded the traditional premises liability distinction between invitees and licensees. Prior to *Mounsey*, a plaintiff licensee had to show that a landowner's conduct amounted to wilful and wanton disregard of the likelihood of harm. In contrast, invitees needed to show only a breach of a duty of due care. In *Mounsey*, we held that the standard of due care applied to all lawful entrants. *Id.* at 703, 706-707. We expressly excluded trespassers from this rule. *Id.* at 707 n.7.

In *Mounsey*, the plaintiff was a police officer acting in his official capacity at the time he was injured on the defendant's premises. He was on the premises to serve a criminal summons for a parking violation on one of the defendants. We noted, *id.* at 701-702, that a public employee who enters upon private property to perform official duties did not fit into any of the traditional categories of invitee, licensee or trespasser. We referred to the "confusing and often inconsistent results" in cases involving the distinction between invitees and social guests, who were considered mere licensees. *Id.* at 705-706.

The difficulty in distinguishing between invitees and licensees was one reason, but not the principal one, for our abandonment of those categories as determinants of premises liability. The dominant consideration was that such a distinction "no longer comport[s] with modern accepted values and common experience." *Id.* at 703.[3]

---

[2] The rule has two exceptions: as to imperiled trespassers whose presence becomes known to the owner, the owner owes a duty of reasonable care, *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 707 (1974), and as to certain foreseeable child trespassers, the owner owes a duty that conforms to the negligence standard of G. L. c. 231, § 85Q (inserted by St. 1977, c. 259), *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979). The statute did not become effective until more than twenty-three years after the plaintiff in Soule was injured and, therefore, was inapplicable to him. This plaintiff falls in neither of these classes.

[3] "Admittedly, such '[c]omplexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper

In *Mounsey, supra* at 707 n.7, we expressed our sense "that there is significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right — such as licensee or invitee." We continue to perceive that significant difference and we recognize now, as we did then, that any legal duty owed by a landowner to an entrant upon his land finds its source in existing social values and customs. We can say with confidence that landowners of ordinary prudence customarily exercise care for the safety of trespassers who are known to be in a position of peril,[4] certain foreseeable child trespassers,[5] and all lawful visitors.[6] However, we are not convinced that landowners of ordinary prudence customarily exercise care for the safety of adult trespassers generally.

General Laws c. 231, § 85Q, provides that a duty of reasonable care is owed to certain foreseeable child trespassers. This demonstrates the Legislature's recognition of a com-

---

considerations,' but the licensee-invitee distinction and the specious guidelines it generates obscure rather than illuminate the relevant factors which should govern determination of the question of duty. See *Rowland v. Christian*, 69 Cal. 2d 108, 117 (1968). *The owner's conduct in maintaining his premises does not depend on whether his visitor is a social or business acquaintance.* Moreover, the visitor's safety does not become less worthy of protection by the law because he is a social guest and not a business invitee." (Emphasis added.) *Mounsey v. Ellard*, 363 Mass. 693, 706 (1973).

The court then noted that "'[t]here has, however, been quite a vigorous undercurrent of dissent, as to whether this [classification of the social guest as a licensee] *is really in accord with present social customs* under which it is contended that the guest, invited and even urged to come, rightfully expects more than mere inactivity for his safety; and some writers have urged that the social guest be treated as an invitee.' Prosser, Torts (4th ed.) § 60. See Harper, *Laube v. Stevenson*: A Discussion, 25 Conn. Bar J. 123; McCleary, the Liability of a Possessor of Land in Missouri to Persons Injured While on the Land, 1 Mo. L. Rev. 45, 58; Notes, 12 Rutgers L. Rev. 599; comments, 22 Mo. L. Rev. 186; 7 Wm. & M. L. Rev. 313." (Emphasis added.) *Mounsey v. Ellard*, 363 Mass. at 706 n.5.

[4] *Pridgen v. Boston Hous. Auth.*, 364 Mass. 696 (1974).

[5] *Soule v. Massachusetts Elec. Co.*, 378 Mass. 177 (1979).

[6] *Mounsey v. Ellard*, 363 Mass. 693 (1973).

munity consensus that landowners should exercise care for the safety of foreseeable child trespassers in certain circumstances. When that statute was enacted the Legislature could have abolished the common law trespasser distinction, but it did not do so. This strongly suggests that there is no community consensus that landowners ought to exercise care for the safety of adult trespassers.

The lack of such a consensus makes abolition of the common law rule unworkable. In a negligence case involving lawful visitors, foreseeable child trespassers, and known helplessly trapped trespassers, the trial judge typically instructs the jury that they are to determine whether the defendant exercised that degree of care for the safety of the plaintiff that the ordinarily prudent landowner customarily exercises in the same or similar circumstances. The jury focuses on *how* the ordinarily prudent landowner would have discharged his responsibility to care for the plaintiff's safety and compares the defendant's conduct. No question arises as to *whether* such responsibility exists because there is community agreement both that it does exist and that the responsibility is recognized by ordinarily prudent landowners. The current rule assumes a socially accepted moral principle and is therefore workable.

If we were to abolish the trespasser rule, and the trial judge were to instruct the jury that they are to determine whether the defendant exercised that degree of care for the safety of the plaintiff trespasser that the ordinarily prudent landowner customarily exercises in the same or similar circumstances, the jury inquiry would not be limited to comparing the defendant's conduct to *how* the ordinarily prudent landowner would have discharged his recognized responsibility to care for the plaintiff. Because there is no community consensus, the jury would first consider whether the ordinarily prudent landowner recognizes any responsibility *at all* to care for the safety of an adult trespasser. The jury's resolution of the question would be likely to turn on such social policy concerns as the privileges that ought to attach to land ownership, or on the jury's view as to the proper

allocation of the costs of serious injuries. A jury would thus determine, on a case by case basis, the existence or nonexistence of a legal duty of care. Such a determination would be unpredictable and would be made long after the event that prompted the inquiry. If the present case were to be tried and the facts recited above were in evidence, the jury would be warranted in finding that the plaintiff's intrusion was foreseeable by the defendants. The jury would then be required to determine whether present community values call for the exercise of care for the safety of foreseeable trespassers who are neither children nor known to be helplessly trapped. Such determinations are appropriately made by the court or the Legislature, as has heretofore been the practice, and not by juries.

Courts in some jurisdictions have abolished the rule that a landowner is not liable to an adult trespasser for injuries resulting from the landowner's negligence. Most of the cases in which the abolition of the rule has been announced did not involve trespassers. See *Rowland* v. *Christian*, 69 Cal. 2d 108 (1968); *Mile High Fence Co.* v. *Radovich*, 175 Colo. 537 (1971); *Pickard* v. *City of Honolulu*, 51 Haw. 134 (1969); *Smith* v. *Arbaugh's Restaurant, Inc.*, 469 F.2d 97 (D.C. Cir. 1972), cert. denied, 412 U.S. 939 (1973); *Webb* v. *City of Sitka*, 561 P.2d 731 (Alas. 1977); *Scheibel* v. *Hillis*, 531 S.W.2d 285 (Mo. 1976); *Cunningham* v. *Hayes*, 463 S.W.2d 555 (Mo. App. 1971).[7] Other courts, in cases

---

[7] "In this connection it may be appropriate to call to mind the following frequently repeated statement made by Chief Justice Marshall in 1821 in *Cohens* v. *Virginia*, [19 U.S.] 6 Wheat. 264, 399-400 [1821], with reference to his own earlier opinion in *Marbury* v. *Madison*, [5 U.S.] 1 Cranch 137 [1803]: 'It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' *O'Donoghue* v. *United States*, 289 U.S. 516, 550 [1933]. *Humphrey's*

involving trespassers, have abolished the common law classification, but most of them did not involve adult trespassers. See *Ouellette* v. *Blanchard,* 116 N.H. 552 (1976) (ten year old plaintiff); *Mariorenzi* v. *Joseph DiPonte, Inc.,* 114 R.I. 294 (1975) (five year old decedent); *Scurti* v. *City of New York,* 40 N.Y.2d 433 (1976) (fourteen year old decedent); *Cates* v. *Beauregard Elec. Coop., Inc.,* 328 So.2d 367 (La.), cert. denied, 429 U.S. 833 (1976) (sixteen year old plaintiff).

The suggested change in the law would ultimately result in the submission to juries of cases that ought to be decided upon directed verdicts. Compare *Watson* v. *Niagara Mohawk Power Corp.,* 66 App. Div. 2d 996 (N.Y. 1978); *Leone* v. *Utica,* 49 N.Y.2d 811 (1980), aff'g 66 App. Div. 2d 463 (1979). It might be entirely foreseeable that a thief or vandal would enter someone's premises to commit a crime; yet surely it could not be declared that a duty of reasonable care was owed to that person. Such cases should not be for the jury to decide. The New Hampshire Supreme Court in *Ouellette* v. *Blanchard, supra,* recognized this problem and, in essence, created new standards for directing verdicts. After concluding that the common law rule should be abolished, the court stated: "When the intrusion is not foreseeable or is against the will of the landowner many intruders will be denied recovery as a matter of law: In other words, a landowner cannot be expected to maintain his premises in a safe condition for a wandering tramp or a person who enters against the known wishes of the landowner." 116 N.H. at 557. See *id.* at 561 (Grimes, J., dissenting). This approach merely replaces existing rules of law with a new and relatively undefined set of classifications for determining which cases are to be decided by directed verdicts. This approach creates more confusion than it eliminates.

Other areas of our law are consistent with the result we reach here. The common law recognizes that a person may

*Exr.* v. *United States,* 295 U.S. 602, 627 [1935]. *Swan* v. *Superior Court,* 222 Mass. 542, 545 [1961]." *Mounsey* v. *Ellard,* 363 Mass. 693, 713 (1973) (Quirico, J., concurring in part and dissenting in part).

be privileged to act in ways that would be otherwise tortious toward one who violates the legal rights of the actor or a third party. The existence of such a privilege, limited as it is, does not brand the victim an "outlaw." See generally *Antoniewicz* v. *Reszczynski,* 70 Wis. 2d 836, 843 (1975). Rather, the privilege is commensurate with the nature of the violation being committed. It is greatest when bodily harm is threatened, see Restatement (Second) of Torts § 65 (1965), and it diminishes when the violation by the other is to a property right, cf. *Commonwealth* v. *Klein,* 372 Mass. 823 (1977). One in possession of a chattel may use reasonable force to prevent its conversion, see Restatement (Second) of Torts §§ 77, 87 (1965), and a possessor of land is privileged to use reasonable force to prevent a trespass, Restatement (Second) of Torts § 77 (1965). The rule that allows a possessor to forbear from acting with care toward a trespasser is a similar privilege, and we think it also is commensurate with the nature of the violation being committed.

During the last fifteen years this court has on a number of occasions made significant changes in the law of torts.[8] Yet in each of those cases the change has been based on sound public policy. The reasons advanced in favor of abolishing

---

[8] See, e.g., *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507 (1980) (recognizing right of child to recover for loss of parent's companionship and society caused by defendant's negligence); *Dziokonski* v. *Babineau,* 375 Mass. 555 (1978) (abandoning the "impact rule" in cases involving injuries resulting from negligently caused emotional distress); *Whitney* v. *Worcester,* 373 Mass. 208 (1977) (announcing intention to abolish or modify the doctrine of sovereign immunity); *Lewis* v. *Lewis,* 370 Mass. 619 (1976) (abolishing interspousal immunity in claims arising out of motor vehicle accidents) (extended in *Brown* v. *Brown,* 381 Mass. 231 [1980]); *Sorenson* v. *Sorenson,* 369 Mass. 350 (1975) (abrogating doctrine of parental immunity in automobile accident cases); *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153 (1973) (recognizing a right of recovery for negligent deprivation of consortium of either spouse) and cases cited at 166 n.43; *Mounsey* v. *Ellard,* 363 Mass. 693 (1973) (abolishing common law distinction between licensees and invitees); *George* v. *Jordan Marsh Co.,* 359 Mass. 244 (1971) (permitting plaintiff to recover for intentional infliction of emotional distress without proving accompanying physical injury); *Colby* v. *Carney Hosp.,* 356 Mass. 527 (1969) (announcing intention to abolish doctrine of charitable immunity).

the common law trespasser classification are unconvincing. We are told that the rule is an old one with many exceptions, and therefore is obsolete. But the fact that a rule of law is old does not necessarily mean that it no longer serves a valid purpose. Indeed, its age may indicate the strength and universality of the community values it represents. Nor does the existence of exceptions to a rule of law, without more, warrant its rejection. There are few rules of law that do not admit of some exceptions, for the simple reason that it is often impossible to make a statement that will be correct in every instance.[9] If we were to abolish the trespasser classification, exceptions to the law would be necessary in cases involving persons entering the land with criminal intent or with knowledge that they enter against the known wishes of the landowner. See *Ouellette* v. *Blanchard*, *supra*.

It is commonly asserted that the abolition of the traditional rule will eliminate the harsh results that it has sometimes brought about. See, e.g., Comment, Duty of Owners and Occupiers of Land to Persons Entering the Premises: Should Pennsylvania Abandon the Common Law Approach? 17 Duq. L.R. 153 (1978-1979); Case Comment, 8 Suffolk U.L. Rev. 795, 807, 811 n.75 (1974). However, a review of the cases readily demonstrates that any such harshness has already been, or can easily be, ameliorated by the simple adoption of the recognized exceptions to the common law rule. Thus, "where a trespasser is in a position of peril . . . and his presence becomes known, the owner then has a duty to use reasonable care . . . in the circumstances." *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 707 (1974). An occupier of land will also be held to a duty of ordinary care

---

[9] "[A]ll law is universal, but there are some things about which it is not possible to speak correctly in universal terms. . . . [T]he mistake lies neither in the law nor in the lawgiver, but in the nature of the case. . . . So in a situation in which the law speaks universally, but the case at issue happens to fall outside the universal formula, it is correct to rectify the shortcoming . . . ." Aristotle, Nichomachean Ethics, Bk. V, c. 10, at 141-142 (Ostwald Trans. 1962).

to certain foreseeable child trespassers, in conformity with the statutory negligence standard imposed by G. L. c. 231, § 85Q (inserted by St. 1977, c. 259). *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979).

It is apparent then, that upon analysis the reasons commonly stated in favor of abolishing the preclusive effect of the trespasser's status are of little persuasive value. Perhaps the temptation to extend liability in favor of trespassers is born of a desire to permit a reallocation of the costs of serious injuries. This has long been a known tendency of juries, and modern trends in tort law have had this effect. A source of this tendency in the law is the thought that the costs of serious injuries should, through the medium of insurance, be borne by society at large. It has been said that the tendency of modern tort law has been in the direction of a system of liability without fault. See F. Harper & F. James, Torts § 27.1, at 1432 (1956). Perhaps a consequence of these developments has been the emergence in recent years of an attitude shared by some commentators: if someone is injured, it must be someone else's fault — or at least someone else should pay for it. But concerns such as these more properly should be the subject of some sort of universal accident insurance system. They cannot, for reasons too numerous to mention, be addressed by the courts on a piecemeal basis in the context of negligence law. The ready availability of insurance and a sympathetic plaintiff should not allow us to undermine the fundamentals of negligence law. Thus we reject the suggestion of some authorities[10] that the insurability of the landowner's risk of liability warrants abolishing the trespasser classification.

The law of negligence is an imperfect method for compensating the victims of accidents. In the absence of a

---

[10] See James, Tort Liability of Occupiers of Land: Duties Owed to Trespassers, 63 Yale L.J. 144, 151-152 (1953). See also *Smith* v. *Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 107-108 (D.C. Cir. 1972) (Leventhal, J., concurring) (suggesting that the common law classifications be abolished as to persons on business premises but not as to persons on the premises of private homeowners).

better alternative, however, we think the existing system of law will work better if its traditional principles are re-affirmed. The rule of law immunizing landowners from po-tential liability to adult trespassers still serves an important function in defining the duty owed and separating the roles of judge and jury. Abolishing the rule, on the other hand, is both unnecessary and undesirable, especially in light of the humane exceptions to the rule which have been established.

*Judgment affirmed.*

LIACOS, J. (dissenting, with whom Wilkins and Abrams, JJ., join). Under our present case law, a trespasser, as an entrant without consent or invitation, is entitled to no great-er duty of care than that the landowner refrain from wilful and reckless disregard for the entrant's safety. See *Sweeny* v. *Old Colony & Newport R.R.*, 10 Allen 368, 372 (1865); *Burke* v. *Toothaker*, 1 Mass. App. Ct. 234, 238 (1973); Re-statement (Second) of Torts § 333 & Comment b (1965). The court reaffirms this principle today. This court has rec-ognized, however, two exceptions to the general landown-er's immunity arising from an entrant's trespasser status, neither of which benefits this plaintiff. In *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696 (1974), the court ruled that "where a trespasser is in a position of peril . . . and his presence becomes known, the owner then has a duty to use reasonable care . . . in the circumstances." *Id.* at 707. The decision in *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979), announced a common law exception to a landown-er's immunity vis-a-vis certain foreseeable child trespassers, in conformity with the statutory negligence standard im-posed by G. L. c. 231, § 85Q.[1] Cf. *Owen* v. *Meserve*, 381

---

[1] General Laws c. 231, § 85Q, inserted by St. 1977, c. 259, provides: "Any person who maintains an artificial condition upon his own land shall be liable for physical harm to children trespassing thereon if (*a*) the place where the condition exists is one upon which the land owner knows or has reason to know that children are likely to trespass, (*b*) the condition

Mass. 273, 274-275 (1980), cert. denied, 449 U.S. 1082
(1981).

In *Soule* we recognized the Legislature's enactment of
G. L. c. 231, § 85Q, as an effort to soften the "Draconian"
common law doctrine concerning child trespassers. *Soule,*
*supra* at 180. We also recognized that "the action of the
Legislature in passing § 85Q was not meant to, and does not,
foreclose us from announcing compatible changes in the
common law of torts, consistent with the trend of our deci-
sions in *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), *Pridgen* v.
*Boston Hous. Auth.,* 364 Mass. 696 (1974), and *Poirier* v.
*Plymouth,* 374 Mass. 206, 221-228 (1978)." *Soule, supra* at
181-182. I perceive no persuasive reason offered by the
court's opinion today to decline to extend the *Soule* princi-
ples to a *foreseeable adult* trespasser. To do so would not
invoke the uncertainties the court describes, but would be a
natural — and limited — extension not only of recent judi-
cial case law but also of legislative policy.

In *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), this court
abandoned the common law categories of invitee and licen-
see as determinants of premises liability. We held in *Moun-*
*sey* that Massachusetts landowners could not claim immunity
from negligence liability based simply on the entrant's
licensee status. *Id.* at 703, 706. Ruling that a single duty of
due care applied to all lawful entrants, the court concluded
that attempts to fashion judicial refinements of status had
produced only confusing and often inconsistent results.
However, the *Mounsey* court limited applicability of the
new negligence standard to lawful visitors. Justice Kaplan,
concurring, took issue with the position of the court as to the

is one of which the land owner knows or has reason to know and which he
realizes or should realize will involve an unreasonable risk of death or seri-
ous bodily harm to such children, (*c*) the children because of their youth
do not discover the condition or realize the risk involved in intermeddling
with it or in coming within the area made dangerous by it, (*d*) the utility
to the land owner of maintaining the condition and the burden of elimi-
nating the danger are slight as compared with the risk to children in-
volved, and (*e*) the land owner fails to exercise reasonable care to elimi-
nate the danger or otherwise to protect the children."

trespasser doctrine. His concurrence capsules the fundamental rationale for abandoning all status classifications: retaining the category of trespasser "tends to perpetuate . . . the kind of tradition-bound and mistaken analysis that . . . the court was aiming to correct. For it is sometimes just as hard to distinguish trespassers from licensees or invitees . . . . The very effort at dry classification . . . puts the emphasis at the wrong places." *Id.* at 717-718. In my view, the court's approach today continues this process of putting the "emphasis at the wrong places," albeit in a somewhat different sense. The judicially created doctrine insulating landowners from liability utilized a concept of "status" to bar recovery for all trespassers, in a way that departs from the "fundamental concept that a man is liable for injuries caused by his carelessness," *Rowland* v. *Christian,* 69 Cal. 2d 108, 113 (1968). It has been said that such a doctrine is rooted in the feudal dominance of the landowning class. 2 F. Harper & F. James, Torts § 27.1, at 1432 (1956). See also *Mounsey, supra* at 695, 706. The common law doctrine has been viewed not only as resting on outmoded premises, but also as one that is essentially unworkable. The Supreme Court of Colorado, for instance, concluded that the status system creates confusion and prevents the jury from applying changing community standards to a landowner's duties. *Mile High Fence Co.* v. *Radovich,* 175 Colo. 537, 542 (1971). Accord, *Basso* v. *Miller,* 40 N.Y.2d 233, 240-241 (1976).

The most offensive aspect of the status rules is the injustice inherent in the harshness of summary disposition against a plaintiff as a matter of law. See, e.g., *Mounsey, supra* at 707 (allocating risks of injury too complex to be decided exclusively by entrants' status); *Webb* v. *City of Sitka,* 561 P.2d 731, 732-733 (Alas. 1977) (reversing summary judgment for defendant which had been based on claimant's status as licensee); *Rowland* v. *Christian, supra* at 119 (perpetuating wholesale immunities under common law system can lead only to injustice); *Smith* v. *Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 103-104 (D.C. Cir. 1972),

cert. denied, 412 U.S. 939 (1973) (harshness results because status rules remove from jury the determination of landowner liability); *Scurti* v. *City of New York*, 40 N.Y.2d 433, 440 (1976) (giving conclusive effect to status is "purest legal fiction" and unrealistic); *Mariorenzi* v. *Joseph Di-Ponte, Inc.*, 114 R.I. 294, 300 (1975) (under common law five year old decedent would be nonsuited as trespasser); *Antoniewicz* v. *Reszczynski*, 70 Wis. 2d 836, 839-840 (1975) (upholding trial judge who declared preclusive status rule archaic and irrational).

The entry of this plaintiff on the defendants' land and the plaintiff's use, without consent, of the defendants' quarry was, according to the facts alleged and set out in the court's opinion, entirely foreseeable. Even if a court retained the "status" doctrine in part, such a plaintiff would stand in a position entirely different from that of an outlaw or unforeseen trespasser. Even under the moderate position taken by the Restatement (Second) of Torts, this is a case for a jury. While the Restatement retains the "status" concept (§ 333), § 335 provides, where a possessor of property "knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, [he] is subject to liability for bodily harm caused to them by an artificial condition on the land, if (a) the condition (i) is one which the possessor has created or maintains and (ii) is, to his knowledge, likely to cause death or seriously [*sic*] bodily harm to such trespassers and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved." See also Restatement (Second) of Torts §§ 334, 336-338 (1965).

It would be a modest step by this court to adopt this position; it also would be consistent with the standard recognized in *Mounsey, supra,* as fleshed out by incorporation of the criteria enunciated in *Soule, supra* at 184, and by the language of G. L. c. 231, § 85Q. Despite the court's protestations, a ruling that a "reasonable care" standard includes

the foreseeability of the entrant's presence, as well as the "burden of undertaking precautions . . . compared to the magnitude of the risk involved," *Soule, supra,* would invoke no great departure from our prior law.

The Legislature, as well as this court, has seen fit to delegate to the jury the interpretation of a landowner's negligence standard in G. L. c. 231, § 85Q. The jury ought to be able to translate to adult trespassers the statutory criteria applicable to children. In a case such as this the standards found in § 85Q which are particularly relevant are whether "(*a*) the place where the condition exists is one upon which the land owner knows or has reason to know that [persons] are likely to trespass . . . (*d*) the utility to the land owner of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to [persons] involved." G. L. c. 231, § 85Q. I have little doubt that a jury could receive proper guidance from such a standard.

It should be clear that substitution of a general negligence standard would not furnish unwarranted protection to wrongdoers. Restatement (Second) of Torts, Comment b to § 333 (1965), recognizes that the common law rule itself bestowed immunity from liability on the possessor based on his privilege as a possessor of land and not on the fact that the trespasser, as such, is a wrongdoer. As is manifest from the cases cited, shifting to a negligence analysis would permit the jury to consider as a matter of fact the innocence or malevolence of the entry. The negligence approach simply makes the foreseeability of the trespass and the risk of harm a part of the jury's determination of what conduct is reasonable in the circumstances, rather than a matter of law for the court.

Schofield's appeal presents the "concrete fact situation" of an adult trespasser, and thus raises the question which the *Soule* court deferred, *Soule, supra* at 186. In *Soule* the court, reiterating the *Mounsey* position on trespassers, pointed to a qualitative difference between a child trespasser and a burglar. On the record here, it is not difficult to see a substantive difference between an adult trespasser and

a burglar. Although the plaintiff violated the landowners' territorial rights, he had no intention of harming the defendants or their property, as would a burglar. As one court has noted, a "trespasser . . . is not ipso facto an outlaw." *Antoniewicz* v. *Reszczynski,* 70 Wis. 2d at 843. Moreover, as noted earlier, the policy underlying the status doctrine is not one of preventing wrongdoers from unjust recovery. See Restatement (Second) of Torts § 333, Comment b (1965). Status classifications evolved simply to protect the privilege of land ownership. Informed commentators have repeatedly insisted that a landowner's immunity bespeaks an outdated and harsh notion that free use of property has greater worth than human safety. See 2 F. Harper & F. James, Torts § 27.3, at 1438-1439 (1956); W. Prosser, Torts § 62, at 398-399 (4th ed. 1971). As already noted, I believe the application to adult trespassers of the standards set forth in G. L. c. 231, § 85Q, would strike a proper balance of the respective interests involved. I dissent.